853 So.2d 1051 (2003)
Richard Barry RANDOLPH, Appellant,
v.
STATE of Florida, Appellee.
Richard Barry Randolph, Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC93675, SC01-2855.
Supreme Court of Florida.
April 24, 2003.
Rehearing Denied August 28, 2003.
*1054 Michael P. Reiter, Capital Collateral Counsel-Northern Region, Sylvia W. Smith, Special Assistant CCC-NR, and John M. Jackson, Assistant CCC-NR, Office of the Capital Collateral Counsel-Northern Region, Tallahassee, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Judy Taylor Rush and Douglas T. Squire, Assistant Attorneys General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Richard Barry Randolph, an inmate under sentence of death, appeals an order of the trial court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons that follow we affirm the denial of Randolph's postconviction motion and deny his petition for writ of habeas corpus.

FACTS AND PROCEDURAL HISTORY
In 1989, Randolph was convicted of first-degree murder, armed robbery, sexual battery with force likely to cause serious personal injury or with a deadly weapon, and grand theft of a motor vehicle in the *1055 killing of Minnie Ruth McCollum. The facts surrounding these crimes are discussed in detail in this Court's opinion affirming the convictions and sentences. See Randolph v. State, 562 So.2d 331 (Fla. 1990).[1]
Randolph filed a second amended 3.850 motion on May 1, 1993, and a hearing was ultimately held on July 22, 23, and 24, 1997. At this time, the trial court also heard Randolph's motion to compel production of public records. The trial court granted Randolph sixty days from July 24, 1997, to depose three individuals and to file an amended 3.850 motion based on the public records produced at the hearing. Randolph then filed a motion to compel disclosure and a motion for extension of time to file an amended 3.850 motion, and the State filed an objection. The trial court heard these motions on December 4, 1997, and took testimony from four witnesses involved in Randolph's trial. The trial court granted Randolph until January 26, 1998, to file an amended 3.850 motion.
On January 26, 1998, Randolph filed a third amended 3.850 motion raising two additional grounds for relief. In total, Randolph presented twenty-one claims. The trial court issued an order on February 24, 1998, denying relief on claims one through nineteen and twenty-one, and granting an evidentiary hearing on claim twenty. That evidentiary hearing was held on April 24, 1998, and thereafter the trial court issued an order denying relief on claim twenty. Randolph now appeals the denial of his postconviction motion, raising seven claims.[2]
We find a number of Randolph's postconviction claims to be either procedurally barred, facially or legally insufficient, or clearly without merit as a matter of law.[3] We decline to address these claims.

*1056 3.850 APPEAL

Ex Parte Communication
Randolph argues he was denied a neutral, detached judge in violation of his rights to due process and a fair trial. In support of his argument, Randolph claims the trial court engaged in improper ex parte contact with the State regarding the preparation of the order sentencing Randolph to death, impermissibly delegated its independent duty to weigh aggravating and mitigating circumstances to the State, and unconstitutionally determined Randolph would receive a death sentence prior to the sentencing proceedings.
This claim arose after a public records request under chapter 119, Florida Statutes, when Randolph discovered a draft judgment and sentence in the State's files. The draft judgment and sentence contained a handwritten "insert" mark at the bottom of the first page, along with the date and the initials "R.R.P." handwritten on the last page. The final judgment and sentence differs from the draft in two respects: the final version contains three sentences where the "insert" mark was located in the draft version, and the final version bears Judge Robert R. Perry's signature on the last page. Based on the draft judgment and sentence, Randolph filed a third amended postconviction motion alleging that Judge Perry failed to independently weigh aggravating and mitigating circumstances by either expressly relying on findings prepared by the state attorney or engaging in improper ex parte communication with the state attorney as to the findings to be included in the judgment and sentence. The postconviction court conducted an evidentiary hearing on this matter, and the following evidence was produced.[4]
Pamela Kohler, Judge Perry's law clerk at the time of Randolph's trial, testified that she prepared the judgment and sentence on her computer, and that the only other person who had access to her computer at that time was Judge Perry's judicial assistant, Jill Brown. Kohler stated that Judge Perry was aware of recent case law from this Court remanding cases to the trial court after an aggravating factor had been found legally insufficient because this Court could not determine from the sentencing order whether the trial court would have imposed the death penalty even in the absence of one of the aggravating factors, and that Judge Perry wanted to ensure the sentencing order would not be reversed. Kohler testified that she received assistance with the wording of the order on this point from John Alexander, then an assistant state attorney assigned *1057 to Randolph's case.[5] Alexander assisted Kohler in her office as she sat in front of her computer. Neither Judge Perry nor defense counsel, Howard Pearl, was present. Kohler testified she had no knowledge of any conversations between Judge Perry and the State regarding this or any other issue of the sentencing order, and that she knew Judge Perry clearly intended to impose a death sentence before she met with Alexander.
Randolph claims that the communication between Judge Perry's law clerk and the prosecutor amounted to improper ex parte communication which prejudiced his right to a neutral judge.[6] Canon 3 B(7) of the Code of Judicial Conduct provides that "[a] judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding." Based on this principle, we have repeatedly stated there is nothing "more dangerous and destructive of the impartiality of the judiciary than a one-sided communication between a judge and a single litigant." Spencer v. State, 615 So.2d 688, 691 (Fla.1993) (quoting Rose v. State, 601 So.2d 1181, 1183 (Fla.1992)). Randolph has clearly established that improper ex parte communication occurred between the trial court and the State because Kohler testified that the prosecutor was present in her office, "assisting me with the wording" of the sentencing order, and defense counsel was not present. However, we find that Randolph's right to a neutral judge was not violated by the improper ex parte communication in this case.
In State v. Riechmann, 777 So.2d 342, 351 (Fla.2000), the postconviction court concluded that Riechmann was denied an independent weighing of aggravating and mitigating circumstances because the trial judge, through an ex parte communication with the prosecutor, delegated to the prosecutor the responsibility of writing the order sentencing Riechmann to death. We upheld the postconviction court's findings, noting that section 921.141, Florida Statutes (1985), required the trial judge to independently weigh the aggravating and mitigating circumstances to determine what penalty should be imposed upon the defendant and to draft the order sentencing *1058 the defendant to death. See Riechmann, 777 So.2d at 351.
In Spencer, defense counsel happened upon the trial judge, the state attorney, and the state attorney's assistant proofreading an order sentencing Spencer to death. 615 So.2d at 689. When questioned by defense counsel, the trial judge admitted that the State had prepared a draft of the sentencing order and that defense counsel had not been given notice of the process employed by the prosecutor and the judge. Id. at 690. We reversed the defendant's conviction and remanded the case for a new trial based on reversible error occurring in both the jury selection process and the sentencing portion of the penalty phase. Our decision was predicated in part on the trial judge's error of formulating his decision prior to giving the defendant an opportunity to be heard and in part on the improper ex parte communication. Id. at 690-91.
In both Riechmann and Spencer the issue turned on whether and to what extent the ex parte communication contributed to the improper delegation of the trial court's duty to independently weigh the aggravating and mitigating factors. Here, the postconviction court found:
The Court is convinced in this case by the evidence that the final Judgment and Sentence was in fact prepared by Ms. Kohler or Jill Brown on Ms. Kohler's computer. Even though the contact between Ms. Kohler and assistant state attorney Alexander may have been improper, it did not deal in any way with the judge's independent weighing of the aggravating and mitigating circumstances and his determination to impose a sentence of death. This contact was purely ministerial in nature concerning the wording of the Judgment and Sentence on one narrow issue to express the judge's wishes.[[7]] There was no evidence presented that Judge Perry failed to independently weigh the aggravating and mitigating circumstances to determine whether the death penalty should be imposed or that he failed to do so before directing his law clerk to prepare the Judgment and Sentence.
We conclude the postconviction court's findings are supported by competent, substantial evidence in the record. The postconviction court properly considered the nature of the contact between the judge's law clerk and the prosecutor. See Card v. State, 652 So.2d 344, 346 (Fla.1995) (instructing the postconviction court to consider the nature of the contact between the trial judge and the prosecutor, when the trial judge was given the order, and when the trial judge gave copies to the defendant). Moreover, the postconviction court properly concluded there was no evidence that Judge Perry failed to independently weigh the aggravating and mitigating circumstances in Randolph's case. Unlike Riechmann and Spencer, Judge Perry did not delegate responsibility to the State to prepare the sentencing order; the record indicates that Judge Perry's law clerk prepared the sentencing order on her computer and at the judge's direction. Additionally, Judge Perry specifically identified and explained the applicable aggravating and mitigating circumstances at Randolph's sentencing hearing on April 5, 1989. See Riechmann, 777 So.2d at 352. Randolph has not demonstrated that the sentencing order was not the result of Judge Perry's independent weighing of the aggravating and mitigating circumstances.
*1059 We also reject Randolph's argument that Judge Perry unconstitutionally determined Randolph would receive a death sentence prior to the sentencing proceedings. The postconviction court concluded, "There was no evidence that the trial judge made any decision prior to the end of the penalty phase and prior to weighing the aggravating and mitigating circumstances to impose a sentence of death." The court's conclusion is supported by competent, substantial evidence in the record. Kohler testified that once Judge Perry heard the evidence at trial, he intended to sentence Randolph to death. When asked how she knew this, Kohler responded, "I don't know specifically, but just knowing Judge Perry." However, as the postconviction court pointed out, "a careful reading of [Kohler's] testimony indicates that her opinion that Judge Perry intended to impose the death penalty was in fact just thather opinion." There is no evidence in the record, besides Kohler's opinion, that Judge Perry determined Randolph would receive a death sentence prior to the sentencing proceedings. In sum, although we do not approve of the improper ex parte contact between Judge Perry's law clerk and the prosecutor, we find Randolph was not denied a neutral, detached judge and deny relief on this claim.

Ineffective Assistance of Counsel During the Penalty Phase
Randolph claims defense counsel was ineffective in failing to adequately investigate and present crucial mitigating evidence and in failing to ensure Randolph received an adequate mental health examination. In order to prove an ineffective assistance of counsel claim, a defendant must establish two elements:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Rutherford v. State, 727 So.2d 216 (Fla.1998); Rose v. State, 675 So.2d 567 (Fla.1996). Ineffective assistance of counsel claims present a mixed question of law and fact subject to plenary review based on the Strickland test. See Rose v. State, 675 So.2d 567, 571 (Fla.1996). This requires an independent review of the trial court's legal conclusions, while giving deference to the trial court's factual findings. See Riechmann, 777 So.2d at 350. We find Randolph has failed to establish ineffective assistance of counsel as to either of his claims.
First, Randolph claims defense counsel, Howard Pearl, was ineffective in failing to independently and adequately investigate crucial mitigating evidence. At the July 1997 evidentiary hearing, Pearl explained that his approach to the penalty phase was to employ psychologist Dr. Harry Krop as a mental health expert and leave it up to Dr. Krop to conduct an investigation into penalty phase mitigation and determine what was relevant. Pearl explained it would not have been his practice to call Randolph's relatives to testify at the penalty phase. Instead, Pearl preferred to present mitigation through Dr. Krop because "his testimony is a history of a patient, is an exception to the hearsay rule. So, I get it in through him and I don't have to worry about loose cannons on the deck." Randolph complains that Pearl's approach to the penalty phase fell *1060 outside the reasonable bounds of professional conduct and rendered the outcome of Randolph's penalty phase unreliable. Randolph also complains about Pearl's failure to obtain his school and military records.
At the evidentiary hearing, Randolph presented testimony from his father, mother, stepmother, and his girlfriend's mother as to mitigation he argues should have been presented during his penalty phase had defense counsel conducted a thorough background investigation. The postconviction court summarized the evidence Randolph argues should have been presented:
[He] was placed for adoption at birth, spent time in an orphanage; was adopted by Pearl and Timothy Randolph at six months of age; that Pearl Randolph was mentally unstable, was hospitalized for psychiatric care and was an alcoholic who rejected the idea of adoption and said she could never love an adopted child; that Timothy Randolph was abusive, over-demanding, hot-tempered, often absent and promiscuous; that [Randolph] never had a close relationship with his father; that [Randolph] suffered a lifetime of mental illness; that [Randolph] suffered a lifetime of drug addiction; that he suffered drastic mood changes and outbursts as a child often injuring himself; that he spent time in a day care center as a child while his parents worked; that he was under psychiatric care at age ten; that he grew up amid vicious battles between his parents; that he discovered his father's adulterous relationship; that his parents divorced when he was a child; and that he became addicted to drugs while in the military and continued to use drugs up until the time of the murder.
However, Dr. Krop's testimony at the penalty phase, as summarized by the postconviction court, revealed the following:
[Randolph] was adopted by Timothy and Pearl Randolph at five months of age; that he had difficulty getting along with others in school; that he received psychiatric counseling in the third grade; that Pearl Randolph was emotionally unstable and was hospitalized on a couple of occasions for psychiatric reasons and was an ineffective parent; that [Randolph] was physically abused by his father when his father would tie him up and hit him with his hand, a broomstick or belt all over the body; that [Randolph] was overly sensitive about his small stature; that he graduated high school and served time in the Army before being honorably discharged; that he used drugs while in the Army; that his drug use progressed from marijuana to cocaine and then crack cocaine; that [Randolph] was more irritable, his mood changed, and he flew off the handle while using drugs; that he was a crack cocaine addict and his personality and lifestyle were affected by his drug use beginning in 1984 and particularly in 1988; that his behavior at the time of the murder was influenced by his drug use; that he suffers from a personality disorder; that he never felt close to anyone except his girlfriend; and that he perceived neither of his parents loved him.[8]
After considering all of the evidence, the postconviction court concluded that none of the witnesses at the evidentiary hearing offered any mitigation testimony in addition to that presented by Dr. Krop at the penalty phase. We find this conclusion is *1061 supported by competent, substantial evidence in the record.
The instant case is remarkably similar to Robinson v. State, 707 So.2d 688 (Fla. 1998), and Breedlove v. State, 692 So.2d 874 (Fla.1997). In both cases, the defendants claimed that defense counsel was ineffective for failing to investigate each defendant's background, failing to furnish mental health experts with relevant information which would have supported their testimony about mitigating factors, and failing to call family members and friends who would have testified about each defendant's childhood abuse, mental instability, and addiction to drugs and alcohol. See Robinson, 707 So.2d at 695; Breedlove, 692 So.2d at 877. However, we found that neither Robinson nor Breedlove demonstrated the prejudice necessary to mandate relief under Strickland because the mitigation overlooked by defense counsel would not have changed the outcome of the defendant's sentence in light of the evidence. See Robinson, 707 So.2d at 697; Breedlove, 692 So.2d at 878; see also Tompkins v. Dugger, 549 So.2d 1370, 1373 (Fla.1989) (finding the mitigating evidence overlooked by defense counsel would not have changed the outcome and therefore did not demonstrate prejudice under the Strickland test). We reach the same conclusion in this case.
Even if Pearl's decision to solely rely on Dr. Krop's testimony was deficient, Randolph has not demonstrated error in the postconviction court's conclusion that no prejudice resulted from Pearl's performance. Considering the four valid aggravators and the cumulative nature of the testimony from the evidentiary hearing,[9] we find no error in the postconviction court's finding that Randolph has not demonstrated the prejudice necessary to mandate relief. Robinson, 707 So.2d at 697; see also Routly v. State, 590 So.2d 397, 401 (Fla.1991) (finding that defendant did not demonstrate reasonable probability that sentence would have been different had trial counsel presented proffered mitigating evidence where much of the evidence was already before the judge and jury in a different form).
Randolph also claims defense counsel was ineffective for failing to ensure Randolph was provided an adequate mental health evaluation and for failing to provide the necessary background material to the mental health expert. A criminal defendant is entitled to expert psychiatric assistance when the state makes his or her mental state relevant to the proceedings. See Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Randolph had the assistance of a mental health expert in the form of Dr. Krop. Randolph fails to allege with any specificity the prejudice he suffered as a result of counsel's or the expert's performance. We affirm the trial court's denial of relief on the issue of ineffective assistance of counsel during the penalty phase.

Denial of a Full and Fair Evidentiary Hearing
Randolph claims he was denied a full and fair evidentiary hearing because the postconviction court denied his motion to permit discovery, failed to admit the affidavit of Timothy Calhoun into evidence, and denied his motion for continuance. As an initial matter, we dispose of Randolph's claim that the postconviction court erred in denying his motion to permit discovery. This motion requested permission to depose *1062 State Attorney John Tanner, Assistant State Attorney Sean Daly, and Circuit Court Judge John Alexander. By this Court's order dated December 22, 2000, we relinquished jurisdiction to the postconviction court, directing that Randolph be granted leave to depose Tanner, Daly, and Alexander. Therefore, Randolph's claim has been resolved, he has received the discovery he requested, and he has not been denied a full and fair evidentiary hearing on this ground.
Next, Randolph claims the postconviction court erred in refusing to admit the affidavit of Timothy Calhoun as evidence at the evidentiary hearing. The court was asked to admit this affidavit dated in 1992 from a person who subsequently died. The affidavit indicated that at some unspecified time prior to the murder, Randolph drank beer, smoked marijuana, and became addicted to crack cocaine. The admissibility of evidence lies in the sound discretion of the trial court and trial court decisions will be affirmed absent a showing of abuse of discretion. See Mendoza v. State, 700 So.2d 670 (Fla. 1997). Randolph has shown no abuse of the trial court's discretion and fails to offer any legal or factual support for his argument that the trial court's ruling was in error. Further, the affidavit in question does not fall under one of the four hearsay exceptions by which the statement of a declarant who is unavailable as a witness may be admitted into evidence. See § 90.804(2), Fla. Stat. (1997) (providing that when a declarant is unavailable as a witness, hearsay evidence can be admitted only if it qualifies under one of the following four exceptions: (1) former testimony; (2) statement under belief of impending death; (3) statement against interest; and (4) statement of family or personal history); see also Lightbourne v. State, 644 So.2d 54, 56-57 (Fla.1994) (rejecting claim that trial court should have admitted affidavits from other inmates who were unavailable to testify at the defendant's postconviction hearing). Therefore, we find that the trial court correctly refused to admit the affidavit into evidence and Randolph is not entitled to relief on this claim.
Third, Randolph claims the postconviction court erred in refusing to grant his motion for continuance. Randolph requested the continuance with respect to the evidentiary hearing this Court ordered in Teffeteller v. Dugger, 676 So.2d 369, 371 (Fla.1996).[10] Randolph's complaint centers on the fact that he was required to go forward with the evidentiary hearing without lead counsel.
Granting a continuance is within the trial court's discretion,[11] and the court's ruling on a motion for continuance will be reversed only when an abuse of discretion is shown. See Gorby v. State, 630 So.2d 544, 546 (Fla.1993). An abuse of discretion is generally not found unless the court's ruling on a continuance results in undue prejudice to the defendant. See Fennie v. State, 648 So.2d 95, 97 (Fla. 1994). Randolph has not demonstrated an abuse of discretion in this case; he was represented by counsel at all stages of the evidentiary proceedings and has failed to allege how the court's ruling resulted in undue prejudice. For these reasons, we find the trial court did not abuse its discretion *1063 in refusing to grant Randolph's motion, and we deny Randolph relief on this issue.

Conflict of Interest
Randolph claims defense counsel Howard Pearl labored under an undisclosed conflict of interest because of his status as a special deputy sheriff.[12] We find Randolph is not entitled to relief because this claim is clearly without merit. After conducting an evidentiary hearing, the postconviction court addressed this claim and found:
The Court finds Pearl had no actual or apparent authority to act as a law enforcement officer for the Marion County Sheriff's Department and at no time indicated to anyone that he possessed anything other than a permit for "pistol toting." Sheriff Mooreland testified in giving special deputy status he in no way contemplated Pearl acting as a deputy sheriff in any manner.
The Court finds from the testimony presented that Pearl's status was only that of an honorary deputy sheriff and that his sole purpose in obtaining such status was to be permitted to carry a concealed weapon. The Court finds Pearl's status as a special deputy sheriff did not conflict with his duties as a defense attorney and that there was no per se conflict of interest between Pearl and the Defendant. See Harich v. State, 573 So.2d 303, 305 (Fla.1990); U.S. cert. den., 499 U.S. 985, 111 S.Ct. 1645, 113 L.Ed.2d 740 (1991).
The Court finds Pearl's status as a special deputy sheriff did not conflict with his duty to represent the defendant in this case and there has been no showing that such status adversely affected Pearl's performance in this case. Therefore, the Court finds there was no violation of the defendant's rights under the Sixth, Eighth, or Fourteenth Amendments.
A review of the record reveals the trial court's findings are based on competent, substantial evidence. Pearl testified that he never acted in any capacity as a deputy sheriff, was never certified or trained as a deputy sheriff, never held himself out to be a deputy sheriff, and never received compensation from the sheriff's office. Pearl also testified that he was insured by Florida Sheriff's Self-Insurance Fund and personally paid for this insurance, which was required not because he was an employee of the Marion County Sheriff's Department, but because that department had given him authority to carry a concealed weapon and might be liable for any improper actions concerning the firearm. Moreover, this Court has examined Pearl's status in similar circumstances and held that neither per se nor actual conflict existed. See Teffeteller, 734 So.2d at 1016-17; Quince v. State, 732 So.2d 1059, 1061-65 (Fla.1999); Harich v. State, 573 So.2d 303, 305 (Fla.1990). Therefore, we likewise deny Randolph relief on this claim.
Randolph also claims Judge Perry labored under an undisclosed bias because he failed to reveal that he was a special deputy sheriff. Randolph claims that had he known of Judge Perry's status, he would have filed a motion for recusal. The postconviction court denied an evidentiary *1064 hearing on this claim because it found Randolph presented "no evidence in support of this bare allegation." We agree. Where a motion lacks sufficient factual allegations, or where alleged facts do not render the judgment vulnerable to collateral attack, the motion may be summarily denied. See Ragsdale v. State, 720 So.2d 203, 207 (Fla.1998). A motion to disqualify will be dismissed as legally insufficient if it fails to establish a well-grounded fear on the part of the movant that he will not receive a fair hearing. See Correll v. State, 698 So.2d 522, 524 (Fla. 1997). To determine if a motion to disqualify is legally sufficient, the facts alleged must be facts that would place a reasonably prudent person in the fear of not receiving a fair and impartial trial. Id. Moreover, a "petitioner's subjective fears... are not `reasonably sufficient' to justify a `well-founded fear' of prejudice." Fischer v. Knuck, 497 So.2d 240, 242 (Fla.1986); see also Arbelaez v. State, 775 So.2d 909, 916 (Fla.2000) (finding defendant's subjective fear based on judge's "tough-on-crime" stance and her former employment as a prosecutor was not legally sufficient for disqualification); Tafero v. State, 403 So.2d 355, 361 (Fla.1981) (finding that judge's actual employment as a former highway patrol officer did not require him to recuse himself from first-degree murder trial where one of the victims was a highway patrol officer). Thus, Randolph's conclusory allegation that Judge Perry was biased because he was a special deputy sheriff was not sufficient to warrant an evidentiary hearing as these alleged facts did not render Randolph's judgment vulnerable to collateral attack. We, accordingly, deny Randolph's claim with respect to this issue.

Heinous, Atrocious, or Cruel Aggravating Factor
Randolph claims Florida's statutory language regarding the heinous, atrocious, or cruel aggravating factor is unconstitutionally vague and overbroad, citing Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), for support. This claim is without merit. The relevant jury instruction given at trial reads: "Heinous means extremely wicked or shockingly evil. Atrocious means outrageously wicked and vile. And cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of the suffering of others. A conscienceless or pitiless crime which is unnecessarily torturous to the victim." In comparison, the standard jury instruction reads:
The crime for which the defendant is to be sentenced was especially heinous, atrocious, or cruel. "Heinous" means extremely wicked or shockingly evil. "Atrocious" means outrageously wicked and vile. "Cruel" means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. The kind of crime intended to be included as heinous, atrocious, or cruel is one accompanied by additional acts that show that the crime was conscienceless or pitiless and was unnecessarily torturous to the victim.
The standard heinous, atrocious, or cruel jury instruction is not unconstitutionally vague. See Hall v. State, 614 So.2d 473, 478 (Fla.1993) (concluding that this instruction "defines the terms sufficiently to save both the instruction and the aggravator from vagueness challenges"). Here, the instruction given was substantially similar to the standard instruction approved in Hall. While the trial judge did not state the "additional acts" language at the end of the instruction, he properly defined the terms heinous, atrocious, *1065 and cruel, and properly instructed on the conscienceless, pitiless, and unnecessarily torturous aspect. However, even if it was error to omit this language from the instruction, the error was harmless beyond a reasonable doubt. See Dougan v. Singletary, 644 So.2d 484, 486 (Fla.1994) (concluding that the jury could not have been misled by an inadequate instruction because the crime was especially heinous, atrocious, or cruel under any standard); Davis v. State, 620 So.2d 152, 152-53 (Fla. 1993) (finding that instructional error was harmless where "facts are so indicative of the aggravating factor `heinous, atrocious, or cruel' that we are convinced upon review that there is no reasonable possibility that the faulty instruction contributed to the sentence"). On direct appeal, this Court concluded that the HAC aggravating circumstance was properly found in Randolph's case in light of the evidence that the victim was "repeatedly hit, kicked, strangled, and knifed." Randolph v. State, 562 So.2d 331, 338 (Fla.1990). Accordingly, we deny relief on this claim.

HABEAS CORPUS PETITION
Randolph raises five claims of ineffectiveness of appellate counsel in his habeas petition: (1) whether appellate counsel was ineffective for failing to argue that the trial court erred by refusing to give a cautionary instruction to the jury after the prosecutor elicited testimony that Randolph felt no remorse for his actions; (2) whether appellate counsel was ineffective for failing to argue Randolph's death sentence is unconstitutional because the penalty phase jury instructions shifted the burden to Randolph to prove that death was inappropriate; (3) whether appellate counsel was ineffective for failing to argue that Randolph's absence from a critical stage of the proceedings was unconstitutional; (4) whether appellate counsel was ineffective for failing to argue the State unconstitutionally commented on sympathy towards Randolph; and (5) whether appellate counsel was ineffective for failing to argue that improper prosecutorial argument unconstitutionally diluted the jury's responsibility. For the reasons that follow, we deny Randolph's habeas petition in its entirety.
The requirements for establishing a claim based on ineffective assistance of appellate counsel parallel the standards announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
Petitioner must show 1) specific errors or omissions which show that appellate counsel's performance deviated from the norm or fell outside the range of professionally acceptable performance and 2) the deficiency of that performance compromised the appellate process to such a degree as to undermine confidence in the fairness and correctness of the appellate result.
Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla.1985); see also Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000); Suarez v. Dugger, 527 So.2d 190 (Fla. 1988).
First, Randolph claims appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred in refusing to give a cautionary instruction to the jury after the prosecutor elicited testimony during trial indicating that Randolph felt no remorse for his actions. On redirect of Randolph's girlfriend during the guilt phase of trial, the prosecutor asked:
Prosecutor: Did [Randolph] act remorseful or ashamed, or anything, sad for what he had done?
Randolph's girlfriend: No.
Defense counsel immediately objected and the following occurred at side-bar:

*1066 Defense counsel: May it please the Court? I must make an objection to the last question and answer upon the ground that Counsel has referred to the Defendant's lack of remorse in connection with the incident at the Handy-Way store. This evidence goes over toward, and may be considered by the jury in Phase II, if the Defendant should be convicted of first degree murder. It has been held numerous times by the Florida Supreme Court, the latest that I remember being Robinson v. State, that the State may not refer to a Defendant's lack of remorse, because it is a non-statutory aggravating circumstance which may not be mentioned to the jury. Upon those grounds, Your Honor, I must move for a mistrial of this cause, inasmuch as the error is fundamental, and I do not believe any cautionary instruction to the jury could cure it.
....
Your Honor, I had no objection when Counsel asked the witness about the Defendant's faculties, or whether in her opinion he was under the influence of crack cocaine or not, because I thought that question was proper, even if leading. However, the next question went directly to the issue of whether or not the Defendant showed or expressed remorse. That is a forbidden subject. And it has nothing to do with anything that I asked the witness. It has nothing to do with anything the witness had said before. No door was opened. It was not relativenot relevant to the inquiry, but was unmitigated fundamental error.
The Court: The subject of remorse, as I understand it, has been held to be not a subject to deal with on the question of guilt or innocence, though it may be used to show various other elements of the crime. I think in this case a cautionary instruction is not appropriate because it will merely emphasize the question, or emphasize the matter in the minds of the jury again. I'm not going to grant a mistrial on it, but I say to you, Mr. State Attorney, I think we need to step very carefully. And if you intend to deal with it in argument, beware.
Thus, the trial court sustained the objection but denied the motion for a mistrial. On direct appeal, this Court upheld the trial court's denial of the motion for mistrial. See Randolph, 562 So.2d at 338 ("[W]e find the improper question was harmless beyond a reasonable doubt in both the guilt and penalty phases.").
Randolph now argues appellate counsel was ineffective for failing to raise this specific claim on direct appeal. Specifically, Randolph complains the trial court entertained no argument before refusing to give a cautionary instruction and thus the jury was allowed to consider testimony that Randolph felt no remorse for his crimes. In other words, Randolph argues that defense counsel was not given the opportunity to argue that a cautionary instruction should be given to the jury.
Appellate counsel was not ineffective for failing to raise this claim on direct appeal because this claim was not preserved for review. Defense counsel did not object to the trial court's ruling that a cautionary instruction was inappropriate. In fact, at side-bar defense counsel stated, "I do not believe any cautionary instruction to the jury could cure it." Appellate counsel has no obligation to raise an issue that was not preserved for review. See Robinson v. Moore, 773 So.2d 1, 4 (Fla. 2000). Appellate counsel cannot be deemed ineffective for failing to raise an unpreserved issue on appeal. See Downs v. Moore, 801 So.2d 906, 916 (Fla.2001); Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000). Therefore, Randolph's claim is procedurally barred.
*1067 However, Randolph also argues the trial court's decision constituted fundamental error. Fundamental error is error that "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So.2d 895, 898 (Fla.1997). The trial court's decision not to give a cautionary instruction was not fundamental error because the remark by the prosecutor was isolated and harmless. See Randolph, 562 So.2d at 338.
Next, Randolph claims appellate counsel was ineffective for failing to argue on direct appeal that the penalty phase instructions improperly shifted the burden to him to prove that a life sentence would be appropriate. This Court, however, has consistently held the burden-shifting argument is without merit. See Demps v. Dugger, 714 So.2d 365, 368 (Fla.1998); Johnson v. State, 660 So.2d 637, 647 (Fla.1995). Issues that would have been nonmeritorious in the direct appeal are not the basis for ineffective assistance of appellate counsel claims. See Freeman v. State, 761 So.2d 1055, 1070-71 (Fla.2000).
Third, Randolph claims appellate counsel was ineffective for failing to argue that Randolph's constitutional rights were violated by Randolph's involuntary absence from a critical stage of the proceedings. Randolph complains he was involuntarily excluded from a session held in chambers out of the presence of the jury. Randolph argues that this exchange was, "for all practical purposes," a charge conference and Randolph never waived his right to be present. The record shows, however, that defense counsel did not object to Randolph's absence from the meeting. In fact, defense counsel stated:
Well, as I say, this is not a formal charge conference. I don't think that anything is going to be decided or settled.... This is just to set parameters so the Court will know what the position is. And I don'tI don't believe that his presence is necessary for this since he will be present during the formal conference.
Therefore, this matter was not preserved for appeal, and appellate counsel is not ineffective for failing to raise a procedurally defaulted claim. See Downs, 801 So.2d at 916; Rutherford, 774 So.2d at 647.
Randolph's fourth claim is that appellate counsel was ineffective for failing to argue on direct appeal that the prosecutor made improper comments during the penalty phase closing arguments. Randolph complains about the following comment: "In this phase of the case, when you retire to deliberate, your sentence should be based upon the evidence, not upon emotion, pity, or sympathy, anger, or hatred. But only upon the evidence and the law as His Honor will give you."
Randolph's trial counsel did not object to the prosecutor's comment and the issue was not preserved for appellate review. Appellate counsel has no obligation to raise an issue that was not preserved for review. See Robinson v. Moore, 773 So.2d 1, 4 (Fla.2000). Appellate counsel cannot be deemed ineffective for failing to raise an unpreserved issue on appeal. See Downs, 801 So.2d at 916; Rutherford, 774 So.2d at 643. Moreover, this claim is without merit. See Waterhouse v. State, 792 So.2d 1176, 1190-91 (Fla.2001) (stating that prosecutor may properly argue that sympathy towards a defendant is an inappropriate consideration).
Finally, Randolph claims appellate counsel was ineffective for failing to argue that improper prosecutorial comments unconstitutionally diluted the jury's responsibility. Randolph's trial counsel did not object to the prosecutor's comment and the issue was not preserved for appellate *1068 review. Appellate counsel has no obligation to raise an issue that was not preserved for review. See Robinson, 773 So.2d at 4. Appellate counsel cannot be deemed ineffective for failing to raise an unpreserved issue on appeal. See Downs, 801 So.2d at 916; Rutherford, 774 So.2d at 643. Additionally, this claim is a reargument of a claim from Randolph's 3.850 appeal couched in an ineffectiveness of appellate counsel argument. Thus, to the extent Randolph is attempting to use this habeas petition as a substitute or an additional appeal of his postconviction motion, Randolph's claim is denied. See Hardwick v. Dugger, 648 So.2d 100, 105 (Fla.1994).
Randolph also argues the prosecutor's comments constituted fundamental error. As a general rule, this Court has determined that failing to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review. See Brooks v. State, 762 So.2d 879, 898 (Fla.2000). The sole exception to the general rule is where the unobjected-to comments rise to the level of fundamental error. See id. In order for an error to be fundamental and justify reversal in the absence of a timely objection, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Brown v. State, 124 So.2d 481, 484 (Fla.1960). Moreover, in order for improper comments made in closing arguments of a penalty phase to constitute fundamental error, they must be so prejudicial as to taint the jury's recommended sentence. See Thomas v. State, 748 So.2d 970, 985 (Fla.1999).
The prosecutor's closing penalty phase comment, in context, reads:
We are here for your decision. And your decision will be a substantial factor in His Honor's decision, as it should be. This is not an easy decision. But the decision supported by the evidence and the fact is clear. My statement to you is intended to make it less difficult, to make what is unquestionably a difficult decisionlife is full of tough, difficult decisions, absolutely. When you take that old pet that can't get up anymore, and if you can afford to go to the vet you take him to the vet. If you can't, I think my father-in-law put the dog in the trunk of the car and gave him gas, carbon monoxide. Tough. Punish your child. The children don't believe it, but it hurts us worse than it hurts them. And they won't know it until they're parents. Those are tough decisions. The decision not to resuscitate is a tough decision. But tough decisions are usually right decisions. That's why they're so tough. If they weren't right you wouldn't have to make them. But they leave you with a clear conscience that you did what was right no matter how badly it hurt.
(Emphasis added.) Randolph complains specifically about the emphasized portion of the prosecutor's closing argument.
Randolph has not demonstrated fundamental error. Although this Court has continually expressed intolerance for improper prosecutorial arguments and comments,[13] when the prosecutor's alleged *1069 improper comments are isolated and not overly prejudicial we recognize the trial court's discretion. See Bonifay v. State, 680 So.2d 413, 418 (Fla.1996) ("The control of comments is within the trial court's discretion and an appellate court will not interfere unless an abuse of such discretion is shown."). The comments in this case were not as egregious or cumulative in scope as in cases where we have found fundamental error. See, e.g., Brooks, 762 So.2d 879; Ruiz v. State, 743 So.2d 1 (Fla.1999); Urbin, 714 So.2d 411. Therefore, we find appellate counsel was not ineffective for failing to raise this issue on appeal.

CONCLUSION
Accordingly, we affirm the trial court's denial of 3.850 relief and deny the petition for a writ of habeas corpus.
It is so ordered.
ANSTEAD, C.J., WELLS, PARIENTE, LEWIS, and QUINCE, JJ., and SHAW, Senior Justice, concur.
NOTES
[1] The jury recommended a death sentence by a vote of eight to four. The trial judge found four aggravating circumstances (murder during commission or flight after commission of a sexual battery; murder committed to avoid or prevent lawful arrest; murder committed for pecuniary gain; and murder especially heinous, atrocious, or cruel), no statutory mitigating circumstances, and two nonstatutory mitigating circumstances (Randolph possesses an atypical personality disorder and expressed shame and remorse for his conduct.). The trial judge followed the jury's recommendation and imposed death. See Randolph, 562 So.2d at 334.
[2] In his brief Randolph raises seven claims, but claims one through four contain various subclaims. We have recast and renumbered Randolph's claims as follows: (1) denial of a neutral detached judge in violation of the rights to due process and a fair trial; (2) ineffective assistance of counsel with respect to (a) the investigation and presentation of mitigation evidence, (b) expert assistance, (c) closing argument, (d) prosecutorial misconduct, and (e) jury instructions; (3) denial of a full and fair postconviction evidentiary hearing with respect to (a) the trial court's denial of Randolph's discovery motion, (b) the trial court's failure to admit the affidavit of Timothy Calhoun into evidence, and (c) the trial court's failure to grant Randolph's motion for a continuance; (4) ineffective assistance of counsel in the guilt phase with respect to (a) concessions of guilt, (b) available voluntary intoxication evidence, (c) consultation and advice, (d) lack of a complete record, and (e) defendant's absence from a proceeding which took place before the penalty phase; (5) defense counsel harbored an undisclosed conflict of interest; (6) the trial judge harbored an undisclosed bias in violation of due process; and (7) the heinous, atrocious, or cruel aggravating factor and jury instruction violated the Eighth Amendment.
[3] Claims 2(c), (d), and (e) were insufficiently pled. Claims 4(a), (b), (c), and (d) were conclusory allegations that were also insufficiently pled. Claim 4(e) was legally and facially insufficient to warrant relief under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because Randolph failed to allege how he was prejudiced by counsel's failure to object to his absence at the proceeding.
[4] By order dated December 22, 2000, this Court temporarily relinquished jurisdiction to the trial court for the purpose of conducting an additional evidentiary hearing on Randolph's claim regarding improper ex parte communication between the State and the judiciary. The order also directed the trial court to grant Randolph leave to depose State Attorney John Tanner, Assistant State Attorney Sean Daly, and Circuit Court Judge John Alexander about matters related to this claim, without prejudice to obtain leave of the trial court to depose anyone else who has knowledge about this claim. Tanner, Daly, and Alexander were deposed, and in a subsequent motion to permit discovery, Randolph stated, "Neither Mr. Tanner nor Mr. Daly could provide information regarding how the draft sentencing order made its way into the state attorney file ... Judge Alexander was also unable to provide information regarding how the draft sentencing order made its way into the state attorney file." An evidentiary hearing was conducted and the postconviction court concluded that "no evidence whatsoever" was presented to support Randolph's claim. We agree with the postconviction court and find that no new evidence was produced as a result of the relinquishment of jurisdiction.
[5] Alexander assisted Kohler with wording that appears on the sixth page of the judgment and sentence: "In fact, any of the aggravating factors found to exist would outweigh all mitigating factors; statutory and non-statutory."
[6] The State argues no improper communication took place because there was no evidence of contact between the judge and the State. We reject this argument because Kohler, working as Judge Perry's law clerk, was also prohibited from engaging in ex parte communication. See Parker v. Connors Steel Co., 855 F.2d 1510, 1525 (11th Cir.1988) ("A law clerk, as well as a judge, should stay informed of circumstances that may raise the appearance of impartiality or impropriety. And when such circumstances are present appropriate actions should be taken."); Hall v. Small Business Admin., 695 F.2d 175, 179 (5th Cir.1983) ("Law clerks are not merely the judge's errand runners. They are sounding boards for tentative opinions and legal researchers who seek the authorities that affect decision. Clerks are privy to the judge's thoughts in a way that neither parties to the lawsuit nor his most intimate family members may be."); Kennedy v. Great Atlantic & Pacific Tea Co., 551 F.2d 593, 596 (5th Cir.1977) ("It was [the law clerk's] duty as much as that of the trial judge to avoid any contacts outside the record that might affect the outcome of the litigation.") Moreover, Florida's Code of Judicial Conduct defines "judge" as follows: "When used herein this term means Article V, Florida Constitution judges and, where applicable, those persons performing judicial functions under the direction or supervision of an Article V judge."
[7] Randolph also argues the trial court erred by labeling the contact between the law clerk and the prosecutor "purely ministerial." Although the trial court's characterization of the contact may be oversimplified, we find no basis for relief on this claim.
[8] This Court also summarized Dr. Krop's penalty phase testimony in its opinion affirming Randolph's conviction and sentence. See Randolph, 562 So.2d at 334.
[9] See Teffeteller v. Dugger, 734 So.2d 1009, 1021 (Fla.1999) (finding much of the mitigating evidence that defendant faulted counsel for not presenting was cumulative to that presented by the mental health expert during the sentencing proceeding).
[10] The purpose of this evidentiary hearing was to hear evidence on individual defendants' "Howard Pearl" claims. Teffeteller, 676 So.2d at 370-71.
[11] In fact, the court granted a number of continuances and opportunities for Randolph to amend his 3.850 motion. A second amended motion was filed in 1993 and an evidentiary hearing was held in 1998 on Randolph's third amended motion.
[12] In support of this claim, Randolph relies on the arguments presented in his initial brief in the consolidated case of Teffeteller v. Dugger, 676 So.2d 369 (Fla.1996). In response to this type of practice, this Court has stated: "the purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making references to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived." Duest v. Dugger, 555 So.2d 849, 852 (Fla. 1990); see also Peede v. State, 748 So.2d 253, 256 (Fla.1999).
[13] See, e.g., Brooks v. State, 762 So.2d 879, 905 (Fla.2000) (finding reversible error based on numerous, overlapping improprieties in the prosecutor's penalty phase closing argument); Urbin v. State, 714 So.2d 411, 418-22 (Fla.1998) (disapproving prosecutor's improper closing penalty-phase argument where argument was full of emotional fear and efforts to dehumanize and demonize the defendant).