615 So.2d 688 (1993)
Leonard SPENCER, Appellant,
v.
STATE of Florida, Appellee.
No. 77430.
Supreme Court of Florida.
March 18, 1993.
Nelson E. Bailey, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Sylvia H. Alonso, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Leonard Spencer appeals his convictions for multiple counts of armed robbery and two counts of first-degree murder and his sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. While the circumstances of the two robbery-murders for which Spencer was tried are egregious, the manner in which this trial was conducted requires that Spencer's convictions be reversed and a new trial granted. The record, on its face, establishes fundamental unfairness in the conduct of the trial, beginning with the jury selection process and *689 ending with an ex parte conference between the trial judge and the prosecutor during the sentencing phase of this trial.
In June, 1986, Spencer and a codefendant, Vernon Amos, were involved in two separate robbery-murder incidents. The details of these incidents are set forth in Amos v. State, 612 So.2d 561 (Fla. 1993). Spencer and Amos's first trial, which resulted in convictions and sentences of death, was reversed by this Court and remanded for a new trial because of the restrictions imposed in the jury selection process. Spencer v. State, 545 So.2d 1352 (Fla. 1989); Amos v. State, 545 So.2d 1352 (Fla. 1989). In October, 1989, the second trial commenced and resulted in a hung jury as to both defendants.
The third trial commenced in November of 1989 with Judge James T. Carlisle presiding. The jury found Spencer guilty on all charges, but could not agree on a verdict as to Amos and his case was set for trial a fourth time. Spencer's trial then proceeded to the penalty phase, at the conclusion of which the jury recommended that he be sentenced to death on both counts of first-degree murder. After a series of motions, Spencer was eventually sentenced to death. It is this third trial that is the subject of this appeal.
During the voir dire phase of this trial, Judge Carlisle questioned one potential juror regarding her ability to sentence a person to death. The juror responded that she could, but later stated that she could not. After some confusion on the juror's part in answering the questions asked by the judge and defense counsel, the judge, without a request by the State, excused the juror. Defense counsel objected to the juror's removal and asked on what basis the judge was excusing her. The judge answered that he removed the juror on the basis of the juror's I.Q. The following colloquy took place:
[Defense Counsel]: What are you doing?
The Court: Excusing her.
[Defense Counsel]: On what basis?
The Court: IQ.
[Defense Counsel]: I object to that. I would like to know what the IQ test is for jury service. I would ask the record to reflect that she is the only black member out of the ten.
... .
[Defense Counsel]: I would ask the court to indicate, for counsel's benefit, so I can make the right inquiries, what kind of IQ standard you are imposing.
The Court: I won't even answer that. Let's go.
Mr. Bailey: You will excuse jurors on that basis; is that right?
The Court: Call the next one.
After questioning several more potential jurors, the trial judge also excused another potential juror on the basis of IQ. Defense counsel again objected to the use of an IQ standard. The trial judge ignored the objection and proceeded with the jury selection and trial.
After the conclusion of the trial and penalty phase proceedings before the jury, Spencer filed a motion for a new trial. A single hearing date was then scheduled for that motion and the sentencing proceeding before Judge Carlisle. When the scheduled time for the hearing to begin had passed, and neither Judge Carlisle nor the state attorney had appeared in the courtroom, defense counsel entered the judge's chambers. Defense counsel found Judge Carlisle, the state attorney, and the state attorney's assistant proofreading an order sentencing Spencer to death. When the court convened moments later, defense counsel noted for the record the situation he had encountered and asked the judge to address it. The judge explained that he had been having a conversation with the prosecutor concerning this Court's decision in Grossman v. State, 525 So.2d 833, 841 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989), in which we ordered the establishment of a procedural rule requiring "that all written orders imposing a death sentence be prepared prior to the oral pronouncement of sentence for filing concurrent with the pronouncement."
Defense counsel voiced his concern that the judge had drafted an order expressing his reasons and conclusions for imposing *690 the death penalty prior to Spencer's counsel having an opportunity to be heard. Defense counsel then moved to recuse Judge Carlisle. The judge denied the motion. In doing so, he admitted that there was indeed a draft of a sentencing order and that defense counsel had not been given notice of the process employed by the prosecutor and the judge. Judge Carlisle then denied the motion for a new trial and stated that the draft in question would not be the order entered in sentencing Spencer. The judge additionally explained that what defense counsel had encountered in the judge's chambers was something other than what it appeared to be.
Several days later, defense counsel filed a second and formal motion for the recusal of Judge Carlisle. Defense counsel also filed a motion calling for Judge Carlisle to withdraw his ruling on the motion for a new trial so that the motion could be determined on its merits by the judge assigned to the case. Judge Carlisle granted the motion for recusal but did not rule on the motion to withdraw his ruling denying a new trial.
After Judge Carlisle recused himself, a substitute judge was assigned. Spencer filed a motion offering as an additional ground for a new trial that, in capital cases, a substitute judge who did not preside over the guilt and penalty phases of the trial may not impose a death sentence. The substitute judge denied the motion and also denied Spencer's motion to set aside Judge Carlisle's denial of the motion for new trial.
The substitute judge then imposed the death sentence, finding the following aggravating factors: (1) the defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence; (2) one of the murders was committed while Spencer was engaged in an armed robbery; (3) one of the murders was committed during the flight from the first murder and while committing a robbery; (4) the first murder was committed for the purpose of avoiding arrest; (5) the second murder was committed for the purpose of avoiding arrest; and (6) the murders were committed in a cold, calculated, and premeditated manner. The sentencing judge found that no mitigating circumstances were present and sentenced Spencer to death.
Spencer contests his convictions and sentence primarily on the basis that the ex parte communications between the prosecutor and the judge were the culmination of a pattern of judicial bias. Spencer argues that this pattern of judicial bias started during the jury selection process when Judge Carlisle improperly injected himself into the selection process by excusing sua sponte several jurors for allegedly having low IQ's. Spencer contends that the cumulative effect of Judge Carlisle's actions violated Spencer's right to due process. The State, on the other hand, argues that the Judge's conduct in this trial was not improper and that the conference between the judge and the prosecution was intended only to properly apply Grossman.
With regard to the trial judge's excusal of jurors during voir dire based on their IQ, we find clear error. There is no legal basis for excusing a juror based on the trial judge's arbitrary evaluation of the juror's IQ. The fact that the juror was confused is no basis for excusing her in this manner. This type of sua sponte action by the trial judge also has other ramifications in this instance since the juror in question was the only black juror on the jury panel at the time she was excused. The record establishes that the jury selection process was so tainted that Spencer's convictions must be reversed and this cause retried once again.
Next, we find it important to address the ex parte communications between the trial judge and the state attorney. In Grossman, we directed that written orders imposing the death sentence be prepared prior to the oral pronouncement of sentence. However, we did not perceive that our decision would be used in such a way that the trial judge would formulate his decision prior to giving the defendant an opportunity to be heard. We contemplated that the following procedure be used in sentencing phase proceedings. First, the *691 trial judge should hold a hearing to: a) give the defendant, his counsel, and the State, an opportunity to be heard; b) afford, if appropriate, both the State and the defendant an opportunity to present additional evidence; c) allow both sides to comment on or rebut information in any presentence or medical report; and d) afford the defendant an opportunity to be heard in person. Second, after hearing the evidence and argument, the trial judge should then recess the proceeding to consider the appropriate sentence. If the judge determines that the death sentence should be imposed, then, in accordance with section 921.141, Florida Statutes (1983), the judge must set forth in writing the reasons for imposing the death sentence. Third, the trial judge should set a hearing to impose the sentence and contemporaneously file the sentencing order. Such a process was clearly not followed during these proceedings.
It is the circuit judge who has the principal responsibility for determining whether a death sentence should be imposed. Capital proceedings are sensitive and emotional proceedings in which the trial judge plays an extremely critical role. This Court has stated that there is nothing "more dangerous and destructive of the impartiality of the judiciary than a one-sided communication between a judge and a single litigant." Rose v. State, 601 So.2d 1181, 1183 (Fla. 1992). This statement was made in recognition of the purpose of canon 3A(4), Code of Judicial Conduct, which states:
A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding.
While we do not find that the trial judge's conduct was intended to deny Spencer a fair trial, we do find that reversible error occurred in both the jury selection and sentencing portions of these proceedings. We conclude that fundamental fairness requires that Spencer receive a new trial. Accordingly, we reverse the convictions and remand this case for a new trial before a new judge.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.