646 So.2d 167 (1994)
David PITTMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 78605.
Supreme Court of Florida.
September 29, 1994.
Rehearing Denied December 19, 1994.
*168 James Marion Moorman, Public Defender and A. Anne Owens, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
David Joseph Pittman appeals his convictions on three counts of first-degree murder and his sentences of death. We have jurisdiction pursuant to article V, section 3(b)(1), of the Florida Constitution. For the reasons expressed, we affirm Pittman's convictions and death sentences.
The record reflects that, shortly after 3 a.m. on May 15, 1990, a newspaper deliveryman in Mulberry, Florida, reported to law enforcement authorities that he had just seen a burst of flame on the horizon. When the authorities investigated they found the home of Clarence and Barbara Knowles fully engulfed in fire. After the fire was extinguished, the police entered the house and discovered the bodies of Clarence and Barbara, as well as the body of their twenty-year-old daughter, Bonnie. Although all of the bodies were burned in the fire, a medical examiner determined that the cause of death in each instance was massive bleeding from multiple stab wounds. In addition, the medical examiner testified that Bonnie Knowles' throat had been cut. A subsequent investigation revealed that the fire was the result of arson, that the phone line to the house had been cut, and that Bonnie Knowles' brown Toyota was missing.
A construction worker testified that, when he arrived at work at 6:30 a.m. on the morning of the fire, he noticed a brown Toyota in a ditch on the side of the road near his job site. Other testimony revealed that the location of the Toyota was about one-half mile from the Knowles residence. The worker also observed a homemade wrecker, which he later identified as belonging to Pittman, pull up to the Toyota and, shortly thereafter, saw a cloud of smoke coming from that direction. Another witness who lived near the construction site also saw the smoke and observed a man running away from a burning car. This witness later identified Pittman from a photo-pack as the man she saw that morning. Investigators determined that the car fire, like the earlier house fire, was the work of an arsonist.
At the time of the murders, another of the Knowles' daughters, Marie, was in the process of divorcing Pittman. The divorce was not amicable and the State introduced testimony that Pittman had made several threats against Marie and her family. The State also produced evidence that Pittman had recently learned that Bonnie Knowles had tried to press criminal charges against him for an alleged rape that had occurred five years earlier.
Carl Hughes, a jailhouse informant, testified that Pittman told him that he had gone to the Knowles' house on the evening of the murders to speak with Bonnie Knowles about the problems he was having with her family. Bonnie let Pittman in the house and, when she refused his sexual advances, he killed her to stop her cries for help. Pittman then admitted to killing Barbara Knowles in the hallway outside Bonnie's bedroom and to killing Clarence in the living room as Clarence tried to use the phone. Pittman also told Hughes that he burned the house, stole the Toyota and abandoned it on the side of the road, and later returned to the Toyota and burned it as well.
The record further reflects that Pittman feared that the police suspected his involvement in the murders, and, at the prompting of his mother, Pittman turned himself in to the police on the day after the murders.
In response to the prosecution's case, the defense presented testimony critical of the police investigation and attempted to establish that Marie, Pittman's former wife, and her new husband had a motive to commit the murders. Pittman testified in his own defense and stated that he had nothing to do with the crimes charged. He also denied *169 that he had told anyone he had committed the murders. The jury found Pittman guilty of three counts of first-degree murder, two counts of arson, and one count of grand theft, and found him not guilty of burglary.
In the penalty phase, the State established that Pittman was convicted of aggravated assault in 1985. In mitigation, Pittman presented the testimony of his mother that he was a difficult child to deal with and that she had disciplined him severely. A clinical psychologist testified that Pittman's father was a paranoid schizophrenic; that as a child Pittman suffered from a severe attention deficit disorder with hyperactivity; and that Pittman has organic personality syndrome, which causes paranoia and an unstable mood. After hearing this testimony, the jury recommended the death penalty for each murder conviction by a vote of 9 to 3. In his sentencing order, the judge found two aggravating circumstances for each murder: (1) previous conviction of another capital or violent felony, and (2) the murders were heinous, atrocious, or cruel.[1] The judge then expressly rejected the mitigating factors of Pittman's being under the influence of extreme mental and emotional disturbance and concluded that the aggravating factors outweighed the proven mitigating factors. The judge imposed the death penalty for each murder.[2] Pittman has raised ten issues in *170 his appeal to this Court, three of which are directed to the guilt phase of the trial.[3]

Guilt Phase
In his first claim Pittman contends that the trial court erred in allowing the State to introduce evidence of Pittman's collateral crimes and bad acts. Pittman asserts that the trial court erroneously permitted the State to introduce evidence of threats Pittman made against his former wife and the Knowles family, an attack on a prison informant, and testimony that Pittman had once made a gas bomb. Section 90.404(2)(a), Florida Statutes (1989), states: "Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity." See Williams v. State, 110 So.2d 654 (Fla.) (same), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). However, evidence of bad acts or crimes is admissible without regard to whether it is similar fact evidence if it is relevant to establish a material issue. See Gorham v. State, 454 So.2d 556, 558 (Fla. 1984), cert. denied, 469 U.S. 1181, *171 105 S.Ct. 941, 83 L.Ed.2d 953 (1985). We have acknowledged that "such evidence, even if relevant, should not be admitted if its probative value is substantially outweighed by undue prejudice." Bryan v. State, 533 So.2d 744, 746 (Fla. 1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989). We find that each bit of evidence of which Pittman complains was clearly relevant to a material fact in issue and of sufficient probative value to be admitted. We find no error in the admission of this evidence.
In his second claim, Pittman asserts that the trial court erred in admitting identification testimony that was influenced by unduly suggestive identification procedures. This claim is based on three separate instances. First, a witness testified that he saw a brown Toyota abandoned on the side of the road early on the morning of the murders. The witness also testified that he saw a homemade wrecker approach the Toyota minutes before it was set on fire. Later that evening, the police drove the witness to Pittman's house to view Pittman's wrecker. The wrecker had been disassembled,[4] and the witness was unable to confirm whether it was the wrecker he had seen that morning. Later, after the police had reassembled the wrecker, the witness was brought back to Pittman's house and this time made a positive identification. Second, another witness testified that he saw a homemade wrecker stop near his house in the early morning hours on the day of the murders; that the driver, whom he later identified as Pittman, got out of the wrecker, shook out the contents of a gas can, returned to the wrecker and then drove off. This witness first identified the wrecker several weeks after the murders from a photo-pack that included photographs of Pittman's wrecker only. Finally, another witness identified Pittman as the man she saw running away from the burning Toyota on the morning of the murders. Her identification was based on a photo-pack that, according to Pittman, was impermissibly suggestive because no other photograph in the photo-pack closely resembled Pittman.
In Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), the United States Supreme Court stated that the test for allegedly suggestive identification procedures is "whether under the `totality of the circumstances' the identification was reliable." The Court also set out the following factors to aid in an evaluation of the likelihood of misidentification:
[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
Id. We have reviewed the record and find that, under the facts of this case, none of the identifications described above were unduly suggestive under the Neil test. The first and second witnesses had a sufficient opportunity to view the wrecker and had given fairly accurate descriptions before the inperson identification. The third witness's identification of Pittman from the photo-pack was preceded by a general but accurate description of Pittman; the identification was made within hours of the original viewing of Pittman; and the photographs in the photo-pack were sufficiently similar to Pittman.[5]
In his third claim, Pittman asserts that the trial court erred by excluding the hearsay testimony of George Hodges, a death row inmate who alleged that his stepson had implicated himself in the Knowles family murders. Early in the trial, the prosecution received an unsolicited letter from Hodges. In this letter, Hodges stated that he had received a letter from his stepson in which the stepson stated that he had killed three people in a failed burglary attempt and that he then burned the house. The trial judge gave defense counsel a few days in *172 which to investigate the allegations. Then, at a hearing on the matter, the judge held that Hodges' testimony concerning what his stepson had told him was hearsay that did not fit within any exception and was therefore inadmissible.[6] We find that the trial judge correctly excluded Hodges' testimony as substantive evidence under the hearsay rule and that there is no applicable hearsay exception.

Penalty Phase
In his first penalty phase issue, Pittman claims that the trial court erred in failing to hold a presentencing hearing as required by Spencer v. State, 615 So.2d 688 (Fla. 1993). In Spencer, this Court explained that, after a jury has returned a recommendation of death, the defendant must be given an opportunity to be heard and to present additional evidence before the judge may impose a death sentence. At the outset, we note that the trial judge did not have the benefit of the Spencer decision at the time of Pittman's sentencing, which preceded Spencer by almost two years. In addition we have reviewed the record and find that Pittman was given an opportunity to present evidence to the judge concerning his sentences. In fact, Pittman called to the court's attention an error in the sentencing scoresheet and succeeded in having his sentence reduced on the arson charges. After that, the judge asked whether the State or the defense had anything to say before sentencing on the three murder convictions. After defense counsel gave the judge an equivocal answer, the following exchange took place:
THE COURT: Are you then saying that there is not present legal cause why judgment and sentence of the law should not be pronounced?
DEFENSE COUNSEL: No, sir.
THE COURT: And are you saying on behalf of Mr. Pittman that he desires no comment at this time?
DEFENSE COUNSEL: Yes, sir.
The trial judge gave Pittman sufficient opportunity to produce additional evidence concerning his sentences on the murder convictions and there was no error.
In his second penalty phase issue, Pittman asserts that the trial judge rendered a legally insufficient sentencing order imposing the three death sentences. The order demonstrates that the judge found that the State had established two aggravating circumstances beyond a reasonable doubt and that no other aggravating circumstances were applicable. The order then rejects the statutory mitigating circumstances of "extreme mental or emotional disturbance" and "capacity to conform his conduct to the requirements of law," with a fact-based and reasoned judgment. The order also provides a reasoned judgment for its rejection of alcohol use and brain damage as mitigating factors in this case, and for its acceptance of the mitigating circumstances that Pittman was a hyperactive personality, that he may have suffered physical and sexual abuse as a child, and that he was an impulsive person with memory problems and impaired social judgment. Finally, the order states with particularity the reasons that this mitigation did not outweigh the aggravating circumstances. We have examined the sentencing order and find no error.
The third and fourth penalty phase issues concern the heinous, atrocious, or cruel aggravating factor, section 921.141(5)(h), Florida Statutes (1989), found by the trial judge. Pittman asserts that the factor itself is vague, arbitrarily and capriciously applied, and that it does not genuinely narrow the class of persons eligible for the death penalty. Pittman acknowledges that this Court has previously rejected this argument. See, e.g., Preston v. State, 607 So.2d 404, 410 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993). For the reasons stated in Preston, we reject Pittman's challenge to this aggravating circumstance. Pittman also argues that the heinous, *173 atrocious, or cruel aggravating factor is not applicable under the facts of this case. The record reflects that each victim was stabbed numerous times and bled to death. In addition, Bonnie Knowles' throat was cut. We have previously held that numerous stab wounds will support a finding of this aggravator. See, e.g., Haliburton v. State, 561 So.2d 248 (Fla. 1990), cert. denied, 501 U.S. 1259, 111 S.Ct. 2910, 115 L.Ed.2d 1073 (1991); Hardwick v. State, 521 So.2d 1071 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988); Johnston v. State, 497 So.2d 863 (Fla. 1986). We find no error in the application of this aggravator under the facts of this case.
In his fifth and sixth penalty phase issues, Pittman contends that the trial court erred in refusing to find the two statutory mitigating circumstances presented and for failing to consider and weigh several nonstatutory mitigators. After a review of the record, we find no error on the part of the trial judge. Given all the evidence presented at trial, we conclude that the judge could have reasonably rejected the expert's testimony concerning Pittman's mental and emotional condition. Further, it is clear that the trial judge did consider the nonstatutory mitigation urged by Pittman but found it to have little weight as a mitigating factor.
In his last issue, Pittman asserts that the death penalty is not proportionate given the substantial mitigation in this case. We disagree. Pittman stabbed his in-laws to death in the middle of the night after taking the precaution of cutting the phone lines. Clearly, these murders justify the sentences imposed in this case.
Accordingly, we affirm all of Pittman's convictions and sentences including his convictions on three counts of first-degree murder and the three sentences of death.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] The sentencing order states:

I. AGGRAVATING CIRCUMSTANCES
1. As an aggravating circumstance, the Defendant, David Joseph Pittman, was proven beyond and to the exclusion of every reasonable doubt to have a previous conviction of a felony involving the use or threat of violence; to wit: Aggravated Assault. (Case No. CF85-3584A1  Sentenced on March 12, 1986.)
2. As an aggravating circumstance, the Defendant, David Joseph Pittman, was proven beyond and to the exclusion of every reasonable doubt to have committed two previous capital felonies as to each of the three murders for which he has been found guilty; to wit: the murders of Bonnie Knowles and Barbara Knowles as to the murder of Clarence Knowles; the murders of Barbara Knowles and Clarence Knowles as to the murder of Bonnie Knowles; the murders of Clarence Knowles and Bonnie Knowles as to the murder of Barbara Knowles.
3. As an aggravating circumstance, the commission of the First Degree Murder of Bonnie Knowles was especially heinous, atrocious or cruel.
By testimony and evidence in the record the court finds that the State proved beyond and to the exclusion of all reasonable doubt that Bonnie Knowles experienced conscious pain and suffering before death as a result of the Defendant cutting and stabbing Bonnie Knowles numerous times with a knife or similar object.
4. As an aggravating circumstance, the commission of the First Degree Murder of Barbara Knowles was especially heinous, atrocious or cruel.
By the testimony and evidence in the record the Court finds that the State proved beyond and to the exclusion of every reasonable doubt that Barbara Knowles [a] experienced pre-death apprehension of physical pain; [b] experienced conscious pain and suffering before death as a result of the Defendant stabbing Barbara Knowles numerous times with a knife or similar object; and [c] that she experienced apprehension of impending death even absent physical pain.
5. As an aggravating circumstance, the commission of First Degree Murder of Clarence Knowles was especially heinous, atrocious or cruel.
By testimony and evidence in the record the Court finds that the State proved beyond and to the exclusion of every reasonable doubt that Clarence Knowles [a] experienced pre-death apprehension of physical pain; [b] experienced apprehension of death even absent physical pain; and [c] experienced conscious pain and suffering before death as a result of the Defendant stabbing Clarence Knowles numerous times with a knife or similar object.
THE COURT concludes from these facts that David Joseph Pittman's actions in murdering each of the three individuals was especially heinous, meaning extremely wicked or shockingly evil; was especially atrocious, meaning outrageously wicked or vile; and was especially cruel, meaning designed to inflict a high degree of pain with utter indifference to, or even with enjoyment of, the suffering of others.
[2] The sentencing order states:

II. MITIGATING CIRCUMSTANCES
As to mitigating circumstances, the Court finds the following:
1. That the three First Degree Murders for which the Defendant is to be sentenced were not committed while the Defendant was under the influence of extreme mental or emotional disturbances, nor were they mitigated by the use of alcohol as suggested. To the contrary, the Court finds the Defendant [a] arranged the visit to his father's house on the eve of the murders, the first time in months that he had been to his father's house; [b] that he left the house by an outside door from a locked room; [c] walked the short distance in the early morning hours to the victim's home; and [d] there cut the telephone lines to the outside of the house.
The Defendant upon entering the victim's home, systematically killed all the occupants of the house using a weapon that assured the least possibility of drawing the attention of witnesses. He then proceeded in a knowledgeable way to pour gasoline about the house and out into the yard. Testimony at the trial revealed that he understood the use of fire to destroy evidence. Before setting the fire, however, he secured the keys to Bonnie Knowles car for the purpose of his getaway.
The Defendant's actions and all other evidentiary circumstances considered show a direct conscious plan to kill and avoid apprehension. These actions do not indicate a person functioning under the influence of extreme mental or emotional disturbances. In regard to the influence of alcohol, other than the expert's opinion, the record does not reflect it to have been a factor in the commission of the murders.
2. Except for the solicited opinions of the Defendant's expert that the Defendant's capacity to conform his conduct to the requirements of the law was substantially impaired, this mitigating circumstance is unsupported by any other evidence in the record.
To the contrary, these facts reveal that all the actions by the Defendant leading up to the killings, the nature of the killings themselves, the methodical steps taken to destroy evidence, to effectuate a getaway, and to establish an alibi were the product of deliberate thought. These actions clearly show that the Defendant knew what he was doing and that it was unlawful. Again the presence of alcohol as a mitigating factor is unsupported by the record except for the expert's opinion.
THE COURT finds there is nothing in the record to demonstrate that the Defendant could not conform his conduct to the requirements of law.
3. The expert has offered an opinion as a mitigating circumstance that the Defendant suffers brain damage. Other than this opinion there exists no corroborating evidence to suggest the presence of this damage or its degree, nor its actual relationship to the murders.
4. Additional mitigating circumstances offered in evidence are that the Defendant was and may still be a hyperactive personality, and that he may have suffered physical and sexual abuse as a child. Also the expert testified that the Defendant was an impulsive person with memory problems and impaired social judgment.
Taking all these mitigating circumstances in a light most favorable to the Defendant, the Court finds they have little if any connection to the murders. The record speaks clearly of an individual who went about the killings and the destruction of evidence in a deliberate, methodical and efficient manner to such an extent that detection was nearly avoided. But for a lady picking roses early one morning who happened to see the Defendant running from Bonnie Knowles' burning car, the case might not have been successfully prosecuted.
While addressing meaningful facts, the record reflects another that enlightens upon the issues of the Defendant's intentions and his capacity to understand what he was doing was unlawful. That fact was the Defendant's cutting of the telephone lines. This was admitted by the Defendant to witness Hughes as being done before the Defendant entered the home of the victims.
THE COURT, therefore, finds the aggravating circumstances established by the proper burden of proof to substantially outweigh all mitigating circumstances reflected in the record.
[3] The issues are as follows: (1) whether the trial court erred in allowing evidence of collateral crimes and bad acts; (2) whether the trial court erred in admitting identification testimony; (3) whether the trial court erred in excluding hearsay statements of a third party's alleged confession; (4) whether the trial court failed to hold a presentencing hearing; (5) whether the trial court rendered a legally insufficient sentencing order; (6) whether the heinous, atrocious or cruel aggravating circumstance is unconstitutionally vague; (7) whether the trial court erred in instructing the jury on the heinous, atrocious or cruel aggravating circumstance; (8) whether the trial court erred in failing to find the two statutory mental mitigating circumstances; (9) whether the trial court erred in failing to find nonstatutory mitigating circumstances; (10) whether the death penalty is disproportionate in this case.
[4] Pittman disassembled the wrecker early in the morning after the murders and shortly before he turned himself in to the police.
[5] In fact, at one point during the suppression hearing the trial judge remarked that three of the people displayed in the photopack "could have been the defendant's brother if not the defendant himself."
[6] Although Pittman argued that section 90.804(2)(c), Florida Statutes (1989) ("A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement."), applied to the statement by Hodges' stepson, the trial judge found that the stepson was available to testify and that the statement lacked corroboration and trustworthiness.