865 So.2d 677 (2004)
Ricardo BRYAN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-2890.
District Court of Appeal of Florida, Fourth District.
February 18, 2004.
*678 Carey Haughwout, Public Defender, and Gary Caldwell, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Donna M. Hoffmann, Assistant Attorney General, West Palm Beach, for appellee.
MAY, J.
The defendant appeals his conviction and sentence on two counts of aggravated assault on a law enforcement officer. He raises four issues, one of which we find has merit. We reverse in part and remand the case for a reduction in the charges and resentencing.
On the evening of September 10, 2001, Officers Rauch and Good were patrolling an apartment complex as off-duty officers. The officers encountered the defendant loitering in the complex parking lot, sitting on the hood of a car. Upon asking the defendant to leave the premises, the defendant went into "an immediate rage, out of control, yelling, carrying on, screaming." This encounter resulted in the officers having to have the defendant's car towed because it was parked blocking the street. Irate that the officers towed his car, the defendant called 911 and threatened Officer Rauch's life.
On October 4, 2001, the officers were again patrolling the apartment complex in a marked police car. They spotted the defendant walking down the street. Later *679 that evening, they passed the defendant while he was walking along the sidewalk. Officer Rauch looked over his shoulder and saw the defendant charging the rear right of the police vehicle, crouched over and holding something close to his body. Officer Good testified that he heard the defendant yell: "Do you want a piece of this?" Both officers ducked and Officer Good hit the accelerator to get away.
Approximately twenty minutes later, the officers saw a car heading toward them. Officer Rauch recognized the car as belonging to the defendant. "The car came right in our direction, not totally head on, but right towards us without coming off the gas, without any swerving, without anything, like we were going to get hit head-on by this car." The officers swerved to avoid the crash. The defendant's car ended up in the same lane as the officers. The defendant took off as the officers exited their car. The defendant later turned himself in after an arrest warrant had been issued.
A jury convicted the defendant of two counts of aggravated assault on a law enforcement officer. It is from this conviction and the resulting sentence that the defendant appeals.
The defendant first argues that the trial court abused its discretion in admitting testimony concerning the first encounter. We disagree. The trial court found that the evidence of the first incident was inextricably intertwined with the charged crimes and necessary to "adequately describe" how the officers knew the defendant's car and why the defendant would assault them. See Pittman v. State, 646 So.2d 167 (Fla.1994); Griffin v. State, 639 So.2d 966 (Fla.1994). We find no abuse of discretion in this ruling.
Relying on Wallace v. State, 724 So.2d 1176 (Fla.1998), the defendant next argues that he could not be convicted of two counts of aggravated assault on a law enforcement officer because both charges arose from a single incident. In Wallace, the defendant assaulted an officer and battered another while both officers were trying to secure the defendant's arrest. The jury found the defendant guilty of two counts of resisting an officer with violence. The supreme court held that the defendant could not be convicted of two counts of resisting arrest for a single incident. In doing so, the supreme court reiterated the Grappin/Watts "a/any test" and applied the rule of lenity. See State v. Watts, 462 So.2d 813 (Fla.1985); Grappin v. State, 450 So.2d 480 (Fla.1984).
Most recently, however, our supreme court addressed the "a/any test" in Bautista v. State, 863 So.2d 1180 (Fla.2003). The court explained the analysis to be used in determining whether multiple convictions for a specified crime can result from a single incident.
"Legislative intent is the polestar that guides a court's statutory construction analysis." Id. at 1185. First, courts should look to the statute's actual language. Only if it is unclear should the court resort to traditional rules of statutory construction and examine legislative history. When that occurs, the court should review the statute as a whole, look to the "evil to be corrected, the language, title, and history" to determine the statute's intent. Id. (quoting State v. Anderson, 764 So.2d 848, 849 (Fla. 3d DCA 2000)). Applying these principles, the supreme court held that the DUI manslaughter statute allowed for separate convictions for each victim even though the deaths arose from a single vehicular accident.
The court clarified that the "a/any test" "serves as a valuable but nonexclusive means to assist courts in determining the intended unit of prosecution." Id. at 1188. *680 When the legislature uses the article "a", the unit of prosecution is clear. However, when the adjective "any" is used, ambiguity may arise, and the "a/any test" provides a means for applying the rule of lenity. The court made clear, however, the use of the word "any" does not automatically render the statute ambiguous. Id. The "a/any test" is of little value in this case because the statute does not employ either word.
Applying this process to the statute in question leads to the conclusion that the legislature intended the aggravated assault statute to allow for multiple convictions from a single incident. The aggravated assault statute's actual language reveals clear legislative intent. There is no need to resort to statutory construction and legislative history.
The assault statute requires the State to prove that the "unlawful threat by word or act to do violence" created "a well-founded fear" in the victim to support a conviction. § 784.011(1), Fla. Stat. (2001). Thus, there must be evidence that each victim experienced a "well founded fear" for multiple convictions to result from a single incident. In this case, both officers testified to having been placed in fear. The multiple convictions are therefore affirmed in this respect.[1]
The defendant next argues that the victims were not acting as law enforcement officers at the time of the offense and therefore the charges should be reduced from aggravated assault on a law enforcement officer to aggravated assault. We agree with the defendant on this issue.
Subsection (2) of section 784.07, Florida Statutes (2001) provides:
(2) Whenever any person is charged with knowingly committing an assault or battery upon a law enforcement officer, ... engaged in the lawful performance of his or her duties, the offense for which the person is charged shall be reclassified as follows:
...
(c) In the case of aggravated assault, from a felony of the third degree to felony of the second degree. Notwithstanding any other provision of law, any person convicted of aggravated assault upon a law enforcement officer shall be sentenced to a minimum term of imprisonment of 3 years.
There is no dispute that the victims were law enforcement officers. The more difficult question is whether they were engaged in the lawful performance of their duties at the time of the incident. We find Nicolosi v. State, 783 So.2d 1095 (Fla. 5th DCA 2001), helpful in resolving this issue.
In Nicolosi, the fifth district reversed a conviction for battery on a law enforcement officer after the defendant slapped an off-duty police officer who was working at a nightclub checking identification. The court held that the State failed to prove *681 that the off-duty officer was engaged in "activities of an official police nature, as opposed to activities exclusively for the interest of the private employer" and was merely "on the job" for the private employer. Id. at 1096-97.
There are times when an off-duty officer may be working for a private employer, but engages in activity of an official police nature. See, e.g., State v. Hartzog, 575 So.2d 1328 (Fla. 1st DCA 1991) (off-duty officer engaged in lawful performance of his duties when assisting investigation of suspect detained by store employee for shoplifting); Hughes v. State, 400 So.2d 533 (Fla. 1st DCA 1981) (off-duty officer engaged in lawful performance of duties when arresting suspect for shoplifting). But, that did not occur here. State v. Robinson, 379 So.2d 712 (Fla. 5th DCA 1980) (off-duty officer engaged in lawful performance of his duties when assisting two other officers struggling to maintain custody of a man they just arrested).
The evidence did not establish that the officers in this case deviated from their private employment of providing security to the apartment complex to undertake activity of an official police nature. We therefore reverse the convictions for aggravated assault on a law enforcement officer and remand the case to the trial court to reduce the convictions to charges of aggravated assault. This will require the court to resentence the defendant in light of the reduced charges. We find no merit in the remaining issue raised.
POLEN and KLEIN, JJ., concur.
NOTES
[1] We acknowledge that the United States Supreme Court reviewed a federal assault statute in Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), and found that multiple convictions for assault could not be sustained based on a single incident. However, the statute in this case is distinguishable from the federal statute examined in Ladner. In Ladner, the assault and resisting arrest offenses were contained within the same statute. The United States Supreme Court found no evidence of congressional intent to allow for multiple convictions based upon a single incident of resisting arrest or of firing a shotgun. Because Florida has separate statutes for these offenses, and the Florida assault statute evidences clear legislative intent to allow for multiple convictions, it does not suffer from the same ambiguity leading to the application of the rule of lenity as did the federal statute in Ladner.