# Supreme Court of Florida

_____

No. SC13-443
_____

**JAMES ROBERTSON,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[March 17, 2016]

PER CURIAM.

James Robertson pleaded guilty to a charge of first-degree murder, waived the right to a jury recommendation on sentencing, and did not object to, contest, or rebut the State's evidence and argument for a sentence of death. The trial court adjudged Robertson guilty of first-degree murder and sentenced him to death after concluding that the aggravators outweighed the mitigators. We have jurisdiction of the direct appeal. See art. V, § 3(b)(1), Fla. Const.

Appointed counsel brings this appeal on behalf of Robertson, who sought to dismiss this appeal or limit the advocacy of his appointed appellate counsel in accordance with his stated desire to be executed. We did not allow Robertson to

dismiss his appeal based on our precedent but permitted him to file his own brief in support of his desire to be executed.  See Robertson v. State, 143 So. 3d 907 (Fla. 2014).

**FACTS**

In connection with his plea of guilty to the charge of first-degree murder, Robertson submitted statements admitting that in December 2008, while an inmate at Charlotte Correctional Institution, he killed his cellmate, Frank Hart, by strangling him with a garrote he made by tying several socks together.  According to Robertson's statement, there was no provocation or fight that led to the murder.  Rather, Robertson planned the murder by waiting until Hart was asleep and the guards had made their rounds, when he knew he would have thirty minutes before the guards would return to the section.  Robertson also submitted an affidavit stating that he murdered his cellmate so that he would be charged with first-degree murder and sentenced to death.

At the time of the murder, Robertson was forty-five years old and had been in prison for twenty-eight years, having first been convicted of a felony before his eighteenth birthday.  Subsequent convictions for offenses committed within the prison system resulted in additional sentences, and Robertson's prospective release date at that time was 2038.  Based on a history of violence within the prison system, Robertson was being held under close management.

Initially, Robertson was charged with second-degree murder. The State offered him a plea agreement of a life sentence in exchange for a guilty plea. Robertson rejected the offer, insisting that the charge should be first-degree murder because the killing was premeditated. In 2011, his appointed attorney requested that Robertson be given a mental evaluation to determine his sanity at the time of the killing. Two mental health experts, a psychiatrist and a psychologist, examined Robertson and concluded he did not meet the standard for insanity.

In October 2011, while in the Charlotte County Jail where he was housed during times that his presence was needed in court hearings, Robertson attacked a county jail officer with a homemade weapon and was charged with attempted murder.

In October 2012, the State indicted Robertson for first-degree murder. The same two mental health professionals evaluated him again, this time for competence to stand trial. Through counsel, Robertson advised the court that he intended to plead guilty. The trial court set a date for Robertson to formally plead guilty in court. Robertson and the State agreed to submit documents for the court to review before the plea hearing, including a sworn statement in which Robertson admitted his guilt and the transcript of his statement to police investigators. Robertson and the State also agreed that, upon acceptance of Robertson's guilty plea, the court would proceed to the matter of sentencing.

At the hearing, various documents were admitted into evidence, including those previously submitted to the court. The State introduced the Florida Department of Corrections' homicide investigation report, the medical examiner's autopsy report, Robertson's affidavit and recorded statement, the reports on the mental health evaluations of Robertson's sanity and competency, his prior criminal convictions, and his prison records. The parties also submitted a statement of stipulated facts. The court conducted a plea colloquy with Robertson to inquire into his knowledge and understanding of the charge, his legal rights, and the consequences of his plea. On the basis of the documents submitted and the plea colloquy in open court, the court accepted Robertson's plea of guilty and adjudicated him guilty of first-degree murder.

Because Robertson waived his right to have a jury make a recommendation on sentencing, the trial court conducted the penalty proceeding without a jury. In support of its argument that a sentence of death should be imposed, the State introduced into evidence all of the same documents, records, and reports as were submitted in the guilty plea portion of the hearing, as well as evidence that Robertson was serving a prison sentence at the time of the murder. A Presentence Investigation Report (PSI) prepared by an officer of the Department of Corrections (DOC) was submitted to the court. Based on Robertson's instructions, defense counsel did not object to the documents introduced by the State. On questioning

by defense counsel, Robertson testified that he had committed the murder intentionally and also acknowledged guilt of the subsequent attempted murder of the Charlotte County jail guard. Based on Robertson's waiver, defense counsel did not contest the State's presentation with respect to aggravating circumstances. The court announced on the record that Robertson had waived his right to a penalty-phase trial and to the presentation of mitigation evidence.

The trial court found that the following aggravating circumstances had been established: (1) that the defendant had previously been convicted of a capital felony or a felony involving violence; (2) that the defendant was under a sentence of imprisonment for a previous felony conviction; (3) that the murder was especially heinous, atrocious, or cruel; and (4) that the murder was committed in a cold, calculated, and premeditated manner without pretense of moral or legal justification. The court ascribed moderate weight to the first two and great weight to the latter two circumstances.

As for statutory mitigating circumstances, the court found only that the defendant was under extreme mental or emotional disturbance brought on by depression based on his being depressed about his future prospects as a prisoner and the severe restrictions of being held in close management, but gave it little weight. Based on documents filed by the State, the court found the following nonstatutory mitigating circumstances were shown to exist: (1) a history of

alcoholism and substance abuse disorders in Robertson's family; (2) Robertson's hyperactivity during childhood, a possible sign of an underlying disorder; (3) the poverty, substance abuse, and domestic violence to which Robertson was exposed in childhood; (4) Robertson's use of several different types of drugs from an early age and his long criminal history, which resulted in long-term incarceration, depriving him of any opportunity for a normal life; and (5) Robertson's attainment of a General Educational Development (GED) certificate in prison. The trial court gave the nonstatutory mitigation little weight.

The trial court found that the aggravating circumstances outweighed the mitigating circumstances and that a sentence of death was not disproportionate. After the trial court sentenced Robertson to death, his appointed attorney filed a notice of appeal on his behalf.

Robertson's appointed appellate counsel, an assistant public defender, filed a motion to withdraw as counsel, bringing to this Court's attention the fact that Robertson did not want counsel to pursue an appeal on his behalf and wished to waive his right to an appeal. The Court denied the motion to withdraw in an order requiring "current counsel to continue to prosecute this appeal fully for the benefit of the Court in meeting its statutory and constitutional duties," and allowing Robertson to "file a pro se supplemental brief setting forth his personal positions and interests with regard to the subject matter of the appeal." Robertson, 143 So.

3d at 910. In his pro se supplemental brief, Robertson submits that the only issues the Court should address are (1) the sufficiency of the evidence and (2) the proportionality of the death sentence in light of death sentences upheld in other cases.

**ANALYSIS**

Robertson's appointed attorney raises four claims on his behalf in this appeal: (1) the trial court erred in accepting Robertson's waiver of the presentation of mitigating circumstances without appointing special counsel to investigate and present such evidence on his behalf; (2) the PSI considered by the trial court was insufficiently comprehensive to satisfy the applicable requirements; (3) the sentence of death was imposed through a defective procedure in which the judge prepared the sentencing order before the sentencing hearing; and (4) the trial court erred by considering a nonstatutory aggravating circumstance. We will also address the issues of (5) whether Robertson's guilty plea was knowing and voluntary and (6) whether the sentence of death is proportional.

I.

The standard by which we review a trial court's acceptance of a death penalty defendant's waiver of the right to present mitigating evidence is whether the court abused its discretion. See Spann v. State, 857 So. 2d 845, 854 (Fla. 2003). Counsel argues that under the circumstances of this case, where

- 7 -

Robertson's defense attorney acquiesced in his wish to waive the presentation of evidence of mitigating circumstances, the trial court should have appointed special counsel to investigate Robertson's background and the circumstances of the offense in order to gather and present mitigating evidence to the court and that it was an abuse of discretion for the court not to do so. He argues that without any advocacy in favor of a life sentence, the result is a sentence of death imposed by default, which is not permitted under this Court's decisions in Hamblen v. State, 527 So. 2d 800 (Fla. 1988), and Koon v. Dugger, 619 So. 2d 246 (Fla. 1993).

In Hamblen, where we said that the "courts of this state can[not] administer the death penalty by default," 527 So. 2d at 804, the defendant was allowed to discharge counsel and represent himself with standby counsel. The defendant pleaded guilty and waived a jury sentencing proceeding. At sentencing, the defendant did not challenge the State's presentation and submitted no evidence himself. Id. at 801-02. On appeal from the sentence of death, it was argued on the defendant's behalf that the trial court should have appointed special counsel to investigate and present mitigating evidence. The Court found no error in the trial court's handling of the case. Id. at 804. The defendant had been ruled competent, and "in the final analysis, all competent defendants have a right to control their own destinies." Id. The Court noted that much of the material that one would expect to see presented in a case for mitigation was already before the court in the

psychiatric reports on the defendant's competency and sanity. There may have been additional material available that was not contained in those reports, the Court said, but even if special counsel had been appointed, "there [was] no power that could have compelled Hamblen to cooperate and divulge such information." Id. The Court held "that there was no error in not appointing counsel against Hamblen's wishes to seek out and to present mitigating evidence and to argue against the death sentence." Id. The trial judge, who provided "a thoughtful analysis of the facts," had "adequately fulfilled that function on his own, thereby protecting society's interests in seeing that the death penalty was not imposed improperly." Id. "At the trial level . . . 'defendants have a right to control their own destinies' when facing the death penalty." Farr v. State, 656 So. 2d 448, 450 (Fla. 1995) (quoting Hamblen, 527 So. 2d at 804).

In Koon, the Court reaffirmed that a competent defendant may waive the presentation of mitigating evidence, but held that defense counsel must evaluate potential areas of mitigation that could be developed and discuss them with the defendant. 619 So. 2d at 250. To minimize the possibility of a defendant waiving mitigation without a showing on the record that the waiver was a knowing one, the Court adopted the following prospective rule:

> When a defendant, against his counsel's advice, refuses to permit the presentation of mitigating evidence in the penalty phase, counsel must inform the court on the record of the defendant's decision. Counsel must indicate whether, based on his investigation, he reasonably

believes there to be mitigating evidence that could be presented and what that evidence would be. The court should then require the defendant to confirm on the record that his counsel has discussed these matters with him, and despite counsel's recommendation, he wishes to waive presentation of penalty phase evidence.

Id.

In Chandler v. State, 702 So. 2d 186 (Fla. 1997), the defendant waived the right to present mitigating evidence. Defense counsel informed the trial court of the defendant's decision and described the penalty phase witnesses he would have called on defendant's behalf. On appeal, the defendant argued that the trial court had erred in accepting defendant's waiver because defense counsel had failed to tell the court what the mitigating evidence would be, contrary to the requirements of Koon. The Court found that the defendant's argument was based on a "hypertechnical interpretation of what Koon requires in this situation." Id. at 199.

> Obviously, our primary reason for requiring this procedure was to ensure that a defendant understood the importance of presenting mitigating testimony, discussed these issues with counsel, and confirmed in open court that he or she wished to waive presentation of mitigating evidence. Only then could the trial court, and this Court, be assured that the defendant knowingly, intelligently, and voluntarily waived this substantial and important right to show the jury why the death penalty should not be imposed in his or her particular case.

Id. Because the trial court conducted a colloquy with the defendant, confirming on the record that the defendant understood the importance of mitigation and that counsel had discussed mitigation with him, the Supreme Court found that the Koon procedure was fully satisfied.

- 10 -

The purpose of the <u>Koon</u> procedure is to make certain that the record reflects a defendant's knowing waiver of the right to present mitigation. <u>See</u> <u>Mora v. State</u>, 814 So. 2d 322, 332-33 (Fla. 2002). As this Court has held, "the end sought by the <u>Koon</u> decision" is satisfied when there are records and documents before the court pertaining to the circumstances of the offense and the defendant's character and background. <u>Waterhouse v. State</u>, 792 So. 2d 1176, 1184 (Fla. 2001).

Appointed counsel's claim on this point is based on the argument that since the trial court did not follow the <u>Koon</u> procedure, it was error to accept Robertson's waiver of the presentation of mitigating evidence. Defense counsel did not state that he had investigated mitigation, believed there was mitigating evidence that could be presented, or stated what the evidence would show. Thus, appointed counsel argues that the trial court erred in not requiring counsel to indicate whether, based on his investigation, he reasonably believed mitigation evidence existed and what that evidence would be.

However, based on the unique circumstances of this case, we reject this argument. The court examined Robertson on the record to ensure that he wanted to waive mitigation and that he understood what he was waiving. The waiver was knowing and voluntary and was, in fact, made at the defendant's request. The decisions discussed above, from before and after <u>Koon</u>, hold that a competent defendant has the right to "control his destiny," meaning the defendant has the

power to control his defense. Robertson clearly intended to, and did, waive the presentation of mitigation evidence.

Further, while defense counsel failed to discuss the mitigation that exists in this case, the court had before it all the documents and background information from which mitigating evidence could have been derived had Robertson allowed such evidence to be presented, particularly as Robertson has spent most of his adult life in prison and was incarcerated as a juvenile before that. As Robertson himself expressly stated, "everything about my family history, mental health, education, etc., is well documented and already part of the record." The trial court had before it the psychiatric and competency evaluations, the PSI, the DOC's investigation report, the autopsy report, the statement of stipulated facts, Robertson's recorded and transcribed statement to State investigators, and Robertson's in-court testimony. The PSI and the competency reports included information about Robertson's mental health, family background, and school experience. These materials provided a substantial amount of information about the circumstances of the offense, as well as Robertson's character and background. Whether to appoint special counsel was a matter within the court's discretion. See Sparre v. State, 164 So. 3d 1183, 1198-99 (Fla. 2015). Under the circumstances, it was not an abuse of discretion for the court not to appoint special counsel.

II.

Florida Rule of Criminal Procedure 3.710(b) provides that when a capital defendant chooses not to challenge the death penalty and refuses to present mitigation evidence, "the court shall refer the case to the Department of Corrections for the preparation of a presentence report." The rule requires the report to be "comprehensive" and include such matters as "previous mental health problems, (including hospitalizations), school records, and relevant family background." Appointed counsel for Robertson claims the presentence investigation performed in this case was not comprehensive and was inadequate to serve the purposes of the rule. The trial court found the report sufficient and received it into evidence. We review the trial court's action for abuse of discretion. See Fitzpatrick v. State, 900 So. 2d 495, 524 (Fla. 2005).

Our decision in Muhammad v. State, 782 So. 2d 343 (Fla. 2001), was the original impetus for the adoption of rule 3.710(b). There the Court announced the policy, later expressed in the rule, requiring "the preparation of a PSI in every case where the defendant is not challenging the imposition of the death penalty and refuses to present mitigation." Id. at 363. As later addressed in rule 3.710(b), we stated in Muhammad that the PSI should be "comprehensive" and "should include information such as previous mental health problems (including hospitalizations), school records, and relevant family background." Id. The PSI prepared in this

case includes a section entitled "Education," which states that Robertson left school after the eighth grade and obtained a GED in prison. The report listed as a source "prior post and pre-sentence investigation and psychological reports and evaluations." There is also a section entitled "Family History," which describes Robertson's upbringing and family relationships. Based on psychological reports reviewed by the investigator, "the defendant admitted to being hyper in the first, second, and third grades." In a section entitled "Physical and Mental Health," the investigator reported that Robertson claimed to be in good mental health, but from time to time had been prescribed medication in the prison system for depression, anxiety, and insomnia, and had participated in group therapy.

Appointed counsel for Robertson argues that the PSI did not meet the requirements of Muhammad because the investigator failed to examine Robertson's school records directly and instead relied on information in previous DOC sentencing investigation reports conducted on Robertson. However, by stating that a PSI should include information such as school records, Muhammad does not mandate that the PSI investigator obtain the defendant's original school records. Rather, school records are an example of the types of information a comprehensive PSI should include. See Fitzpatrick, 900 So. 2d at 524 (holding trial court properly considered PSI that did not include military records because "[t]he substance of the PSI, not the form, is what is important"). The PSI does not

- 14 -

lack comprehensiveness under Muhammad, and we cannot say that the trial judge

abused her discretion in receiving it into evidence.

Appointed counsel for Robertson also argues that it was improper for the

PSI investigator to recommend that Robertson be sentenced to death. In support of

this claim, counsel cites the Committee Note accompanying the 2004 amendment

to Florida Rule of Criminal Procedure 3.710. As mentioned above, rule 3.710(b)

was adopted to effectuate the prospective Muhammad PSI requirement. See

Amends. to Fla. Rules of Crim. Pro., 886 So. 2d 197, 199 (Fla. 2004). The

Committee Note states, "The Department of Corrections should not recommend a

sentence."[1] Id. at 210.

Section 921.231, Florida Statutes (2012), authorizes DOC to conduct

presentence investigations and prepare reports upon referral from the circuit court

in criminal cases under certain circumstances. Section 921.231(1)(o) provides that

the PSI should include "[a] recommendation as to disposition by the court" based

on consideration of several factors.[2] When a court refers a pending capital

---

1. The Committee Note is not binding legal authority supporting the argument that rule 3.710(b) prohibits a sentencing recommendation. When the provision was adopted, this Court stated, "The committee notes and commentary are offered for explanation only and are not adopted as an official part of the rules." Id. at 200.

2. Section 921.231(1)(o) provides in relevant part as follows:

The full report shall include: . . .

- 15 -

sentencing matter to DOC for a PSI under rule 3.710(b), the factors in section 921.231(1)(o) do not apply.  By their plain language, these factors have no bearing on the decision of whether to sentence a defendant to death or life imprisonment.  The corrections officer who prepared the report followed the outline of the statute, including the requirement of subsection (1)(o) calling for a recommended disposition.  However, the sentencing order shows that while the court relied upon the PSI for information about Robertson's background, the officer's recommendation of a death sentence did not influence the judge's sentencing decision.  Under the circumstances, the inclusion of a sentencing recommendation in the report does not render the sentencing order invalid.

## III.

Appointed counsel argues on Robertson's behalf that the trial court violated his procedural rights by preparing the sentencing order before the sentencing

---

(o)  A recommendation as to disposition by the court.  It shall be the duty of the department to make a written determination as to the reasons for its recommendation.  The department shall include an evaluation of the following factors:
1.  The appropriateness or inappropriateness of community facilities, programs, or services for treatment or supervision.
2.  The ability or inability of the department to provide an adequate level of supervision for the offender in the community and a statement of what constitutes an adequate level of supervision.
3.  The existence of other treatment modalities which the offender could use but which do not exist at present in the community.

hearing. He argues that this procedure was constitutionally defective and deprived him of due process of law with the result that the sentence of death cannot stand. We reject the claim that the procedure the trial court used was fatally flawed as a matter of law. We apply an abuse of discretion standard and conclude that the trial court acted appropriately under the circumstances.

Spencer v. State, 615 So. 2d 688 (Fla. 1993), requires that before the final determination of sentence, the judge must hold a hearing, the purposes of which are: (1) to give the parties and counsel an opportunity to be heard; (2) to give the parties an opportunity to present additional evidence; (3) to allow the parties to comment on or rebut information in a PSI or medical report; and (4) to provide the defendant the opportunity to address the court in person. Id. at 691. Normally, the Spencer hearing follows the penalty phase of the trial, which is usually conducted with a jury, and takes place after the court receives the jury's recommendation. Following the Spencer hearing, the judge must recess the proceeding, consider the sentence, write the sentencing order, and then convene a separate hearing to impose the sentence and file the order. Id.

Here, jury sentencing had been waived. The judge combined the evidentiary portion of the sentencing hearing, the Spencer hearing, and the imposition of the sentence into one proceeding, and the sentencing order was prepared in advance. The parties stipulated that the trial judge should consider all the important

- 17 -

documents in camera before the hearing. In effect, this meant that to save time at the hearing, by agreement of the parties and the court, the trial judge previewed all the materials to be submitted at the hearing. These included Robertson's affidavit, in which he admitted guilt and waived a jury sentencing proceeding and all mitigating evidence, as well as a transcript of his interview with law enforcement investigators, in which he also admitted his guilt of premeditated murder. The hearing itself included presentation of the following items of testimony and argument: (1) a colloquy to determine whether Robertson's guilty plea was being entered knowingly and voluntarily; (2) the testimony of DOC's investigating officer who submitted the PSI to the court; (3) Robertson's testimony, in which he again admitted his guilt for the murder, as well as the separate charge of attempted murder of the county jail officer; (4) argument from the State in favor of a sentence of death; and (5) defense counsel's statement to the court that Robertson did not contest the State's evidence or argument and did not wish to present mitigating evidence, but reminding the court of its duty to consider any mitigating evidence that might appear in the record. The purpose of the Spencer rule is "to ensure that trial judges take the time to consider all relevant circumstances and arrive at an informed decision uninfluenced by haste and initial impressions." Happ v. Moore, 784 So. 2d 1091, 1103 n.12 (Fla. 2001). Robertson was not deprived of the opportunity to present evidence or address the court before the imposition of

sentence. Under these circumstances, we conclude that the judge's preparation of the sentencing order before the hearing did not deny Robertson due process of law.

IV.

Appointed counsel argues on Robertson's behalf that the trial judge erred by finding and considering a nonstatutory aggravating circumstance. The sentencing order includes the following:

> Defendant has repeatedly expressed his wish to enter a plea of guilty to first degree murder, with the intention of receiving a sentence of death. At first appearance on June 11, 2009, Defendant stated that the charge should be first degree murder rather than second degree murder, because it was premeditated. Defendant stated in his October 19, 2012 affidavit that he wanted to plead guilty to first degree murder and receive a death sentence. He reiterated these statements to Dr. Silver according to Dr. Silver's October 19, 2012 report, and to Dr. Schaerf in Dr. Schaerf's report following his evaluation of Defendant on November 2, 2012. The Pre-Sentence Investigation (PSI) report references a forensic evaluation of Defendant on October 19, 2011, where Defendant indicated he had been "thinking about how to go to death row" since 2008. In his recorded statement taken on October 19, 2012, Defendant indicated he had been thinking about how to get the death penalty since July 2008, and after murdering his cellmate, when he realized he was being charged with second degree murder, he wrote to five individuals in the State Attorney's Office in 2009 indicating the murder was premeditated and requesting the death penalty. In the recorded statement, Defendant told the investigators that if he did not receive the death penalty, he would continue to kill until he received it. Accordingly, the Court assigns <u>great weight</u> to the Defendant's wishes and intent.

The claim is that these findings—and specifically the assignment of "great weight" to the defendant's wishes—show that the trial judge considered Robertson's wish to be sentenced to death as an aggravating circumstance.

The only matters that may be considered in aggravation in a capital sentencing proceeding are the circumstances set forth in section 921.141(5), Florida Statutes. See, e.g., Oyola v. State, 158 So. 3d 504, 509 (Fla. 2015); Zack v. State, 911 So. 2d 1190, 1208 (Fla. 2005); Riley v. State, 366 So. 2d 19 (Fla. 1978); Elledge v. State, 346 So. 2d 998 (Fla. 1977). Evidence in aggravation—that is, evidence that tends to weigh in favor of a death sentence—may not be introduced unless it relates to one of the aggravating circumstances set forth in section 921.141(5). See, e.g., Poole v. State, 997 So. 2d 382, 392 (Fla. 2008); Kormondy v. State, 703 So. 2d 454, 463 (Fla. 1997). Nor may such evidence be considered by the sentencing judge. See, e.g., Oyola, 158 So. 3d at 509; Perez v. State, 919 So. 2d 347, 376 (Fla. 2005); Miller v. State, 373 So. 2d 882, 885-86 (Fla. 1979).

In the sentencing order, the judge found that Robertson wanted to be sentenced to death; that when charged with second-degree murder, he tried to get the State to charge him with first-degree murder; that he pleaded guilty and waived mitigation so that he would receive a death sentence; and that he had stated he would continue to try to kill people until he received a death sentence. The trial judge then stated that she gave these facts great weight. We do not agree with the

argument made on Robertson's behalf that these findings reflect consideration of a nonstatutory aggravating circumstance. The essential point of these findings was that Robertson killed his cellmate not because of a conflict with the cellmate but in order to achieve his goal of being sentenced to death. This motivation for the murder, i.e., Robertson's desire to be sentenced to death, was thus relevant to the aggravating circumstance that the capital felony "was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification," § 921.141(5)(i), Fla. Stat. (2008), a statutory aggravating circumstance which the judge found to exist. It was therefore proper for the judge to discuss the evidence of his motive in the sentencing order. As a result, we find no impropriety in the sentencing judge's findings as to these facts, nor in her discussion of them in relation to the sentencing decision.

## V.

In every initial death penalty appeal, whether the issue is raised or not, this Court reviews the legal sufficiency of the evidence to support the verdict of guilt. See, e.g., Pham v. State, 70 So. 3d 485, 501 (Fla. 2011); Davis v. State, 859 So. 2d 465, 480 (Fla. 2003). When a conviction is based on a guilty plea rather than the verdict of a trier of fact, the Court instead reviews the issue of whether the plea of guilty was knowingly and voluntarily entered. See, e.g., Altersberger v. State, 103 So. 3d 122, 128-29 (Fla. 2012); Barnes v. State, 29 So. 3d 1010, 1020 (Fla. 2010);

Winkles v. State, 894 So. 2d 842, 847 (Fla. 2005). The record shows that the trial court conducted an extensive inquiry into Robertson's knowledge and understanding of the charge against him, his legal rights, and the consequences of pleading guilty. The record amply supports the conclusion that Robertson's plea of guilty to the charge of first-degree murder was knowing, intelligent, and voluntary.

## VI.

In every initial appeal from a judgment of first-degree murder for which a sentence of death has been imposed, this Court addresses the issue of the proportionality of the death sentence. See, e.g., Altersberger, 103 So. 3d at 130; Bolin v. State, 869 So. 2d 1196, 1204 (Fla. 2004). In this type of review, the Court compares the case to other cases to determine whether a death sentence is warranted in light of all the circumstances. See, e.g., Davis, 859 So. 2d at 480; Urbin v. State, 714 So. 2d 411, 416-17 (Fla. 1998). Having compared the facts of this case to those of cases with comparable circumstances and similar combinations of aggravating and mitigating circumstances, we find the sentence of death meets the standards of proportionality. See, e.g., Eaglin v. State, 19 So. 3d 935, 949-50 (Fla. 2009); Blackwelder v. State, 851 So. 2d 650, 651, 654 (Fla. 2003); Cox v. State, 819 So. 2d 705, 723-24 (Fla. 2002).

# CONCLUSION

The conviction of first-degree murder and the sentence of death are affirmed.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur.
CANADY and POLSTON, JJ., concur in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Charlotte County,
    Christine Hissam Greider, Judge - Case No. 082009CF0008120001X

Howard L. Dimmig, II, Public Defender, Steven L. Bolotin, Assistant Public Defender, and Julius Joseph Aulisio, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida; and James Robertson, pro se, Raiford, Florida,

    for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Stephen D. Ake, Assistant Attorney General, Tampa, Florida,

    for Appellee